## SPEAR *vs.* CRAWFORD.

Where, by the terms of the charter of a joint stock company, stockholders are liable in their individual capacities for the payment of all debts contracted by the company to the nominal amount of stock held by them respectively, a *party who subscribes* for a certain number of shares of the stock is liable for the debts of the company to the nominal amount of the stock subscribed by him, although he has not paid in any part of his subscription, or done any act whatever as a stockholder of the company.

The Harlaem canal company were not confined in their purchases of land to the mere thread of the canal; and whether lawful or not to divide the *excess* of lands purchased by them among the stockholders, a *stockholder*, when sued by a *creditor*, cannot allege that or any other illegality in the acts of the company in bar of a recovery against himself. Such illegal acts do not *per se* work a forfeiture.

ERROR from the superior court of the city of New-York. Crawford sued Spear in the court below, as a stockholder of the Harlaem Canal Company, to recover to the nominal amount of stock held by Spear, in part satisfaction of a demand Crawford held against the company; alleging that Spear was a stockholder to the amount of sixteen shares of stock of fifty dollars each. The action was founded on the ninth section of the act incorporating the Harlaem Canal Company, *Statute of* 1826, *page* 369, by which it is enacted that the stockholders of the corporation shall be holden in their *individual capacities* responsible, jointly and severally, for the payment of all debts contracted by the company, to the nominal amount of stock held by such stockholders respectively; and any person having any demand against the company, may sue any stockholder singly, or any two or more stockholders jointly, and recover in any court having cognizance thereof; providing, however, that such suit shall not be maintained without proof

that such demand had been presented to the proper officer of the company for payment, and the payment thereof neglected or refused; and providing also that the corporation shall be liable to be prosecuted as a corporation for any such demand. On the trial of the cause the plaintiff proved a debt against the company to the amount of $3,060, a demand of payment of the company and refusal, and notice thereof and demand of the defendant before suit brought. He also proved a subscription by the defendant to the capital stock of the company to the amount of 16 shares, attached to a paper headed "subscriptions for the capital stock of the Harlaem Canal Company;" which paper recited the obtaining of the act of incorporation of the company, with a capital of $550,-000; that the company had purchased lands over which the canal and streets must pass, and also 5500 building lots, with many valuable buildings, and other improvements thereon; and after setting forth many advantages which must accrue from the enterprize, offers for subscription the capital stock of the company, and the conditions upon which the same would be received; as thus: 1. The canal to be made free of expense to subscribers; 2. The capital stock to be divided into 11,000 shares, of $50 each; the ground, which it was alleged had been laid out into lots, to be divided among the subscribers, so that each subscriber should be entitled to and receive one lot for every two shares subscribed and paid for; the lots to be divided among the subscribers *by lot*, and the same to be conveyed by deed, as soon as the division should be made; and 3. As soon as a sufficient amount of stock should be subscribed to justify the commencement of the work, 10 per cent. thereof to be paid to three individuals named; to be by them paid over, on account of the land and expenditures of the canal, as the work should progress, and the balance of the subscriptions in instalments. Then follows the subscription, in these words: "We, the subscribers, do severally agree to take the shares by us severally subscribed in the Harlaem Canal Company." To which the name of the defendant, for sixteen shares, was subscribed. The secretary of the company, who was called as a witness on the part of the plaintiff, on his cross-examination, testified that the defendant never had, to his knowledge, met

UTICA,
July, 1835.

Spear
v.
Crawford.

with the stockholders, or done any act to make him a stock-holder, other than the signing of the subscription paper; that there was no evidence of his being a stockholder on the books of the company, except the subscription book or paper, and excepting also that the defendant's name was always included among the other stockholders, in the statement of the stockholders of the company. He had paid no instalment, although witness had put a notice for him into the post-office; never had personally applied to him, and had never heard him declare that he was not a stockholder. The plaintiff rested, and the defendant moved for a *nonsuit*, on the following grounds: 1. That the plaintiff had failed to establish his case, which he should have done in the same manner in which the company would have been obliged to establish their case, had the suit been by them against the stockholder; 2. That the mere subscription of the defendant, by its terms, did not make him a stockholder; 3. That the contract between the plaintiff and the company (which was for the sale and purchase of a tract of land) was in violation of the charter of the company, which allows the purchase and sale of *such lands only* as are necessary for the construction of their works, and that such contract was not binding upon the defendant; 4. That the subscription of the defendant, under the conditions annexed thereto was void; 5. That the whole agreement was contrary to the charter, in relation to conveying and holding real property; and 6. That it was contrary to the act prohibiting lotteries, the agreement being virtually a lottery, with prizes of different value. The motion for a nonsuit was denied. The defendant then called the treasurer of the canal company, who testified that the defendant had never attended any meeting of the stockholders, or in any way acted as a stockholder. He further testified that the land deeded by the plaintiff to the company (which was the consideration of the indebtedness to the plaintiff) was necessary to construct the canal which goes through the centre of it; the plaintiff's dwelling-house was on the land sold the company, and on the line of the canal, and was necessary to be removed. The defendant also offered to give in evidence various deeds of quantities of lands purchased and held by the company, alleged to be unnecessa-

ry for the making of the canal and its basins, as contemplated by the act incorporating the company ; which evidence was objected to, and the objection sustained. The plaintiff had a verdict, and the defendant having excepted to the decisions made on the trial, sued out a writ of error.

*J. Prescott Hall,* for the plaintiff in error.

*J. Anthon,* for the defendant in error.

*By the Court,* SUTHERLAND, J. The first section of the act creates the applicants for the charter, and such other persons as then are or may thereafter be associated with them, a body corporate and politic *in præsenti,* without any condition precedent to be performed by them. The 5th section limits the capital to $350,000, which, by a subsequent act, is extended to $550,000, to be divided into shares of $50 each ; and authorizes the directors to *demand from the stockholders* all sums of money by them subscribed, at such time and in such proportions as they shall see fit. The promise of the defendant and the other subscribers, although it is in form to take the shares subscribed by them respectively, is undoubtedly (when taken in connection with what precedes it, and with the act of incorporation, which is there referred to and in part recited) a promise, not only to take the shares, but to pay for them—to take them upon the terms and conditions set forth in the subscription paper ; and the corporation could, undoubtedly, in the appropriate form of action, and upon a declaration containing the necessary averments, have enforced payment of the subscription price of the shares from the subscribers. In the case of *The Goshen and Minisink Turnpike Road* v. *Hurtin,* 9 *Johns. R.* 217, the general doctrine was established, that an action would lie against a stockholder of a turnpike corporation, at the suit of the corporation, on his promise in writing to pay for the shares for which he had subscribed ; and the decision of the court of errors, in *Jenkins* v. *The Union Turnpike Company,* 1 *Caines' Cases in Error,* 86, was not considered as conflicting with that opinion.

UTICA,
July, 1835.

Spear
v.
Crawford.

The same doctrine was reiterated in the subsequent case of *The Dutchess Cotton Manufactory* v. *Davis*, 14 *Johns. R.* 238. That was an action of assumpsit, upon the defendant's subscription for the stock of the company; and the court said, that since the case of Hurtin, the question whether an action would lie, in such a case, ought to be considered as at rest. It was remarked by the court, that there was a consideration appearing on the face of the subscription; that it was a promise to pay $100 for each share of stock set opposite the defendant's name; and that it was to be intended that the defendant had become a stockholder to that amount. In *The Chester Glass Company* v. *Dewey*, 16 *Mass. R.* 94, the general principle, that a subscriber to the stock of an incorporated company may be compelled to pay the subscription price, was held by the whole court; and the objection was there taken, that the defendant was not a stockholder, or member of the corporation, because he had no certificate for the shares subscribed by him; to which it was answered by Ch. J. Parker, that the subscribers would not lose their right for want of certificates, and that a court of chancery would compel the corporation, should they refuse to give them. It is true that none of these cases decide the precise point, that the mere fact of subscribing to the stock of an incorporated company, constitutes such subscriber a stockholder. But they do decide that such subscription puts it in his power to become a stockholder, in the broadest and most unqualified sense of the term, by compelling the corporation to give him the legal evidence of his being a stockholder, upon his complying with the terms of the subscription; and on the other hand, that it puts it in the power of the corporation to compel him to pay for the shares subscribed by him, and thereby to become a stockholder to that amount. Neither party, therefore, can escape from the obligations created by the subscription, without the consent of the other; and I am inclined to think that this state of things is sufficient to constitute the subscribers stockholders, within the meaning of the term, as used in the 9th section of this act, where the rights of third persons are concerned. It was the policy of the act to give to the creditors of the corporation the security of the individual members thereof, and persons

dealing with the company have a right to look to the subscription for the stock, as one means of determining who the stockholders are. As long as the relations subsisting between the subscribers and the corporation are such that the corporation can compel them to pay for their stock, it seems to me the policy of the act requires that they should be considered stockholders. Any other construction would put it in the power of the corporation to collude with the subscribers and defraud the creditors, to a certain extent, of the benefit of this provision of the statute.

The other grounds upon which the defendant objected to the plaintiff's recovery, and moved for a nonsuit, were also properly overruled. The corporation had a right to purchase the land from the plaintiff, by which the debt to him accrued. They are not restricted by their charter to the purchase of the mere thread of the canal. In this case the canal was laid through the centre of the land purchased from the plaintiff, destroying his dwelling house. A mere passage for the canal, could not, under such circumstances, be expected to be purchased, and a reasonable discretion was vested in the corporation, which, in this case, certainly does not appear to have been abused. The 4th section of the act seems to contemplate the possession by the corporation of real estate beyond the absolute necessities of the company, for the mere purpose of making a canal; and from the very nature of the case, it must have been foreseen that the precise quantity required, without any excess, could not probably be obtained.

Whether the manner of distributing or dividing this excess among the stockholders, as set forth in the project of the corporation, was lawful and proper or not, does not appear to me to be material. Admitting it to be unlawful, it would not render the subscription of the stockholders void. The property would still belong to the company, and might be divided or disposed of in any other lawful manner. It did not work a forfeiture, and the defendant, I apprehend, cannot, as against the plaintiff, avail himself of any merely unlawful act of the corporation, either designed or fully consummated.

On the whole, I think the judgment of the superior court should be affirmed.