Mr. Chief Justice Shakeey
delivered the opinion of the court.
The plaintiffs in error sued out garnishee process against the defendant and others as debtors to the Mississippi Railroad Company, on a judgment which they had previously obtained against the Company. Beauchamp alone answered, denying any indebtedness whatever, but proceeded to state the facts on which his denial was predicated. It seems that this Company, as an incorporated bank, in the spring of 1838, opened books of subscription to the capital stock, at Raymond, to constitute the capital of a branch to be located at that place. On these books the respondent entered his name as a subscriber for one hundred shares, being ten thousand dollars, but gave no note or obligation for the payment of the money, nor did he pay any money, although the charter required that ten per cent, on the amount subscribed, should be paid at the time of subscribing. But the *535 Company, pretending a compliance with that provision in the charter, required a note, which should net $1000 after deducting the discount, as a payment of the ten per cent, which note the respondent gave, and which is still unpaid. Sundry other persons executed similar notes for the same purpose, but no money was paid by any of them. The respondent insists that as the charter required a payment of ten per cent, on the amount subscribed, these notes were void. The answer proceeds to state that the company violated its engagement to construct the railroad, and also denies that the branch was established at Raymond, and avers that in consequence of these failures, the subscribers and the public were much imposed upon, and deceived. The defendant therefore concludes by denying that he ever was a stockholder.
An issue was made upon this answer, on which the jury found a verdict for the defendant. A bill of exceptions was taken during the trial to the ruling of the court, and another to the overruling a motion for a new trial. It is now assigned as error, that the court erre.d in charging the jury, and also in denying the motion for aln'ew trial.
The propriety of the charges given must depend upon the evidence. The plaintiff offered the note for $1062x8/w, which had been given by the defendant to the bank, dated 30th March, 1838, payable to the Company at their banking house in Natchez at ten months; and also a check drawn by defendant on the bank, for $1000, dated June 22, 1838, and proved that both were executed by the defendant. The defendant then introduced John B. Peyton, and proved by him that after the parent bank had gone into operation at Natchez, commissioners were appointed to open books of subscription at Raymond for the stock to form -the capital of a branch at that place, he being one of the number. The note offered in evidence was made by the defendant after he had subscribed in said books, and although the note was not made at the time of subscribing, yet the two acts were considered by the commissioners as simultaneous; that this note was given in lieu of the ten per cent, which the charter required to be paid at the time of subscribing, the *536 defendant having paid no money, nor were the proceeds of the note, after it was discounted, sent to the branch at Raymond. It was the understanding between the directors of the principal bank and the commissioners, that this and other notes of the like kind, should be passed by the board as if discounted, and that checks should be drawn by the makers for the amount, after deducting the discount,, which amount should be placed to the credit of the defendant and others, in the books of the bank, instead of the ten per cent, which should have been paid at the time of subscribing; and accordingly the note was delivered to the commissioners to be forwarded, and some time afterwards the commissioners received from the cashier of the bank at Natchez a list of individuals who had received credits for their notes, subject to their checks in payment of their stock subscriptions. This list contains the name of the defendant, against which is placed a credit of $1000. By this communication, the commissioners were requested to receive and forward the checks of the several individuals for the respective amounts to their credit, and accordingly the defendant’s check was taken and forwarded, the place for the payees name being left blank. About the first of October, 1838, directors were appointed by the parent bank for the branch at Raymond, who convened at sundry times; and about the same time the sum of $25,000 was sent up, with directions to appropriate it in advances on cotton, and in buying bills, which amount consisted in notes of the principal bank, and in notes of other banks. No advances were made on cotton, and but a small amount invested in bills, but the directors made a loan to the Raymond Railroad Company. The notes of the principal bank were then at par, but the branch at Raymond never issued notes; and the funds which had been sent up, or the proceeds, were returned to the principal bank.
Gen. Quitman stated that the board of directors of the principal bank had determined to make no general discounts, but still discounted some notes for subscribers, to enable them to pay the ten per cent, required on their subscriptions. The proceeds of such notes were carried to their credit, and permitted *537 to be drawn out only in payment for stock, and the cashier was directed not to pay the checks of subscribers, except to be applied in payment for their stock. The notes were discounted with an understanding that the proceeds should be so applied, and for no other purpose.
Before we proceed to notice particularly the charges of the court, let us first see whether the foregoing facts are sufficient to impose an obligation on the defendant.
The first question which naturally presents itself, is, was he a stockholder by virtue of his subscription. It is to be observed that by the amendments to the original charter, books for subscription to the capital stock were to be opened at different places, under certain regulations. By the ninth section of the supplemental act of 1837, each subscriber was required to pay at the time of subscribing, twenty dollars on each share taken, in specie, or in the notes of specie-paying banks. By the amendatory act of February 1838, the amount required to be paid at the time of subscribing, was reduced to ten per cent, on the amount of the subscription, and a privilege given to pay it in the notes of such banks as the directors might consent to receive. But there was no change as to the time of payment. Here, then, is a positive requirement of law, that each individual, subscribing for stock, should pay a certain per cent, at the time of subscribing. Could any one become a stockholder without complying with this provision? It would seem not. It amounts in effect, to a declaration prohibiting any one from becoming a subscriber without paying the required amount. Two things were necessary to constitute a stockholder ; first, a subscription, or some act equivalent, and second, the payment of the required sum, the latter being the most important act, because it constituted the groundwork, on which the mutual rights of the parties depended. It was a condition precedent to the right to become a stockholder, and without its performance, the subscriber acquired no rights, nor were any obligations imposed on the directors or commissioners. The contract lacked mutuality. The defendant had no means of coercing a stock certificate, or other evidence of ownership, from the directors. *538 They had received no consideration, and were consequently under no obligation. As the defendant could only become a stockholder, by complying with the provisions of the law, proof of the performance of the required condition, would have been an indispensable requisite to his right to call for a certificate of stock. We have here a plain, unambiguous declaration of law. We are not at liberty to say that it was useless, or that its object could be accomplished in a different way, and at a different time. Subscribing for stock, without paying the ten per cent, was a direct violation of the law, and being so, it was void. But it is insisted that a distinction is to be taken between those cases in which the subscription is made to an existing corporation, and a mere subscription in view of a subsequent charter. True, there is a distinction. In the latter case the subscription, or the undertaking is not always obligatory; in the first it is, and an action may be sustained on such a subscription, unless it has been made in violation of law, or, which is the same thing, unless the subscriber has failed to comply with the conditions required by law. The decisions referred to, are based upon two distinct classes of cases; first, where the charter requires that a certain sum should be paid at the time of subscribing; and second, where such requirement has been made by the directors, to whose discretion the matter was left by the charter. In such cases, the directors, having required the payment, may dispense it, either directly or by implication, and the obligation on the subscriber, is still binding. But the directors have no discretion, where the payment is required by the charter. They can neither dispense with it, nor evade it, by adopting a substitute. To the first class belong the cases of The President and Managers of the Hibernia Turnpike Road v. Henderson, 8 Serg. & Rawle, 219; Union Turnpike Company v. Jenkins, 1 Caines’s Cases in Error, 86; The Highland Turnpike Company v. McKean, 11 Johns. R. 98; Lighty v. Susquehanna and Waterford Turnpike Company, 14 Serg. & Rawle, 434; Crocker & Williams v. Crane, 21 Wend. To the second class belong the cases of Delaware and Schuykill Canal Company v. Sansom, 1 Binney, 70; Worcester Turnpike Cor *539 poration v. Willard, 5 Mass. R. 80; Chester Glass Company v. Dewey, 16 Mass. R. 94; Goshen and Minsink Turnpike Road Company v. Hurton 9 Johns. R. 217; Duchess Cotton Manufactory v. Davis, 14 Johns. R. 238; and Spear v. Crawford, 14 Wend. 20. We conclude, then, both on reason and authority, that the subscription was a void act, vesting no rights in the subscriber, and imposing no obligation on the corporation. There was no mutuality of contract. The corporation, could not, under such circumstances, have maintained an action, and of course its creditor, who acquires only such rights as it possessed, cannot be in a bgiter condition. It was in violation of law, to permit a subscription without the payment of the required sum, and no obligation can be contracted which must rest on a breach of the law.
But it does not necessarily follow, that the note was void. That may present a very different question. It may be true that the act of subscribing was void, and still the note may be valid. Although the note may have been made for an improper purpose, yet, if the defendant, by himself or his agents, had the note discounted by the principal bank, and received the proceeds, or consented to their appropriation in a particular way, he must be bound to pay it. If by his consent and approbation, the proceeds were applied in payment for stock, he is still a stockholder, to that amount at least, not in virtue of his original subscription, but by the subsequent purchase. The charter does not designate the mode to be observed in subscribing for stock. Any act, then, which amounts to a valid contract for stock, will constitute a stockholder. If the defendant sent the note to Natchez to be discounted, and afterwards sent a check for the amount, knowing that it would be applied in payment of stock, and consenting to such application, has he not, if the note was so used, received a consideration which will-make the note binding 1 This would seem to be the result. The proof is, that the note was given with an understanding that it would be discounted. Itwas discounted, and the defendant being so .informed, sent a check for the proceeds, knowing how they were to be appropriated. In all this transaction, the *540 officers of the hank, to whom the note and check were sent, acted but as the agents of the defendant, and as he ktiew what was to he done, and consented to the act, and the manner of doing it, he is bound. By his acts he conferred full power on the officers of the bank, to use his money in payment of stock. If they have done so, he is a stockholder to the extent of the amount so paid, and perhaps to a greater amount, if the contract of his agents be of a character to make him a stockholder to a greater amount. In this transaction we find the mutuality which is necessary to make the contract binding. If, by the consent of the bank, so much of the defendant’s money has been invested by the officers of the bank, as agents, in the purchase of stock, the corporation cannot say that the defendant is not a stockholder. The actual payment of the money, evidenced by appropriate entries in the books of the corporation-, would entitle him to receive a stock certificate, or other proper voucher of ownership. Not only did the defendant do every act necessary on his part to consummate the purchase of stock; if we may assume that his money was so applied, but he has acquiesced in the acts of others, performed ■ for him, for a period of time sufficiently long to invest them with a binding character. At least we have no evidence of a disclaimer, evert if he had a right to disclaim them.
Let'us in the next place see how fár the charges of the Court conform to the principles we have laid do win So far as the court held the payment of teri per cent, on the amount subscribed necessary to the validity of the subscription, we agree to the propriety of the charges in their application to the subscription alone. But the court also charged the jury that “If the note was discounted by the company upon the express stipulation that the proceeds should be checked out artd applied to the payment of stock in said company and in said branch at Raymond, and for no other purpose, then the whole contract was in violation of the charter of the bank, and the note sued on is void.” This proposition is in direct conflict with our view of the law. The principal bank had been in operation more than a year, and may have had money to loan. If so, no reason is perceived *541 why a loan made with an understanding that stock should be taken with the money, should be regarded as void. We have said that stock cannot be paid for in the notes of the bank in which the stock is taken. We think it evident that no bank can possess such a self-increasing power ; but it does not follow that it cannot loan money which shall again be returned to it, as a contribution to the capital stock. But it is to be observed, that such a transaction to be valid, must be bona fide, and not in fraud of the charter. If this was of that description, the note is valid, and the defendant became liable to the bank on it, not as a note given for stock, but for money which he had borrowed. There was error then, in this charge of the court for which the judgment must be reversed, and the cause remanded.
Mr. Justice ThacheR concurred in the foregoing opinion.