No. 58.—Ann E. McDougald, adm'x, &c. plaintiff in error, vs. Richard A. Lane, defendant in error.

[1.] The Act of 1850, entitled "an Act to regulate the testimony of Attorneys at law," does not prohibit the testimony of an Attorney, where the information which is sought, was not necessarily "a matter or thing acquired from his client, or during the existence, *and by reason of the relationship* of client and Attorney."

[2.] Where the charter of a bank required that twenty-five per cent. in specie, of the capital stock subscribed, should be paid before the board of directors should proceed to issue their notes, and this was never done, but the board, disregarding it, issued notes, some of which came into the hands of a party who brought suit upon them against a stockholder, who by a provision in the charter, was made ultimately liable, upon the failure of the bank to pay: *Held*, that if the action were against the corporation, by an innocent bill-holder, it could not be allowed to plead (and would be estopped from denying) that there had been a compliance with the terms of the charter, or that the bank had never been legally organized, had no authority to contract, and that its bills were consequently void; and that if the bank would thus be held liable, as the liability of the stockholder, upon failure of the corporation's assets was incidental to that of the bank, the stockholder must be held liable, and cannot avail himself of such a plea.

[3.] The liability of the stockholder in such a case, is not secondary and collateral to that of the directors for an excess of issue, where the charter provides, that "in case of excess, the directors under whose administration it shall happen, shall be liable for the same, in their private and individual capacities, and may be sued for the same in any Court of Record in the U. S." &c. But the stockholder's liability is joint and several with the director; and it is not necessary that the latter should be first sued to insolvency.

[4.] Where, in such a case, against a stockholder, an exemplification of the record of the case first brought against the bank, was offered as evidence of the identity of the bills upon which suit was brought: *Held*, that such exemplification, taken in connection with other circumstances in the case, and especially with the fact, that the notes sued upon in the last case came from the custody of the Attorney of record in the former case, afforded *some* presumptive evidence of that identity.

[5.] If the bill-holder in such a case participated in the fraudulent organization of the bank, and knew that the twenty-five per cent. in specie had never been paid in, and if he were concerned in making a fraudulent and deceptive return to the Governor, so as to enable the directors of said bank to issue notes, a Court of Justice will not lend him its aid to recover the bills in his hands.

McDougald, adm'x, &c. *vs.* Lane.

[6.] The defendant's Attorney is not entitled to an order, requiring the bills
sued upon to be deposited in Court until after final judgment, or payment
of the same.

Debt, in Muscogee Superior Court.    Tried before Judge
WORRELL, December Term, 1854.

This was a suit by a bill-holder against a stockholder, in
the Planter's & Mechanic's Bank of Columbus, to enforce the
liability to redeem sundry bills sued on, amounting to $1900.

The defendant moved the Court to dismiss plaintiff's suit,
on the ground that certain interrogatories which had been
propounded to the plaintiff, and allowed and ordered, by the
Court, to be answered, had not been answered by the plain-
tiff, and produced the original interrogatories, with an entry
made on the same by H. J. Devon, Attorney for the defend-
ant, dated the 22d of March, 1853; that he had served a true
copy of the within interrogatories and notice, on Wm. Dough-
erty, the Attorney for plaintiff. It was also proved to the
Court, that the plaintiff did not reside in the Co. of Muscogee,
and that Devon was dead. The Court did not consider this
sufficient evidence of service. Defendant then offered Mr.
Dougherty as a witness, to prove a copy of the interrogato-
ries was left at his office more than 60 days before the pre-
sent term of this Court. To which Dougherty, as Attorney
for plaintiff, objected to testifying. The objection was sus-
tained by the Court, and the defendant excepted.

The plaintiff, before submitting his cause to the Jury, de-
murred to certain pleas filed by the defendant, marked and
distinguished as Nos. 4, 6 and 7, which pleas were as follows:
No. 4. That the bills sued on are void, because the stock-
holders never paid in the 25 per cent. in specie, as required
by the charter. No. 6. That the plaintiff and his Attorney
had made an illegal agreement, by which the Attorney was
to pay all costs and receive one half of recovery for his ser-
vices. No. 7. That the whole of the bills sued on were an
excessive issue by the directors, and that under the charter,

the stockholders, if liable at all for them, were only ultimately liable, after the personal liability of the directors was exhausted; which demurrers were severally sustained by the Court; and thereupon, the defendant excepted.

The plaintiff introduced A. B. RAGAN as a witness, and proved that the signature of certain bank bills shown, as declared in his declaration, against this defendant, were genuine, and that the persons purporting to sign them as president and cashier, were acting as such at the date of said bills. Said Ragan also proved, that in February or March, 1837, the stockholders, or some of them, met for the purpose of organizing the P. & M. Bank. Some paid in specie—not a large amount—some paid in bills of the banks of the State, and some made notes, indorsed to the satisfaction of the Bank of Columbus. They appointed Gen. S. A. Bailey, John Banks and H. S. Smith a committee, to take charge of what the stockholders had paid in, and make an arrangement with the cashier of the Bank of Columbus about specie; that said committee reported that they had made an arrangement with A. B. Davis, cashier of said bank, and that he would give them a specie certificate of deposit; that the stockholders then proceeded to the election of directors, of whom S. A. Bailey, John Banks and himself were three, and he believed Mr. Gold McKinley and Bonner were the others; that said directors then elected H. S. Smith president, and Peck cashier; that Peck was not present, and witness acted as cashier.

Ragan further testified: That after organizing, they did not do any business. In May following, 1837, Smith resigned his appointment as president, and S. A. Bailey was then elected president. After his election, the president and several of the directors, and he among them, went to the Bank of Columbus and asked for the specie, and Davis told them that the kegs and boxes he showed them contained about $230.000, and that he, Davis, had procured them a certificate of specie deposit from the cashier of the Insurance Bank, for the balance, about $20.000, to make up the sum of

$250.000; that said Davis told them the said specie was at the control and order of the said P. & M. Bank, and might be taken away by them; that said directors did not go to the Insurance Bank, to demand or make any inquiry for the specie in that bank, but took the word of said Davis for it. The defendant objected to giving the statements of the said Davis in evidence; which objection was over-ruled, and defendant excepted. ,

Witness further testified: There was no examination made by them, to ascertain if the kegs and boxes did contain specie; and no count was made to see how much there was, but were satisfied with the statements of Davis, that they did contain specie, and also as to the amount. And the said witness testified, that they then retired, and the directors had a meeting and determined to do no banking business, and passed an order to loan out the money to the stockholders; and if they did not want it, to loan it out to others, except about $2.000, which was retained to pay expenses; that the stockholders generally borrowed the money; that when the stock or shares were subscribed for, only one firm, Kelber & Watkins, of Coweta County, paid in about 6 or 700 dollars in specie. Some of the rest paid in their subscriptions in bills of other banks, but most of them in promissory notes, discounted by the banks of Columbus, which were put under the control of the committee. The witness, who acted as cashier, gave to them who borrowed from the P. & M. Bank, checks on the Bank of Columbus; he did not hear of any demanding specie, but one man, and the bank refused to pay him specie. Witness did not hear why the bank refused. The matter was compromised, by paying Central Bank bills, which were at a discount, but witness did not recollect how much. The directors determined no bills should be issued in 1837, because the bank thought, that in the condition of the country, banking could not be made profitable, and none were issued until 1838. In February, 1838, agreeably to the charter, the annual election came on for directors, and H. S. Smith, D. McDougald, M. W. Deny, John Banks, Hiram Reid and others,

were elected directors, and McDougald was elected president. An order was then passed, that the stockholders who had borrowed of the bank the preceding year, should reduce their debts by paying in one half. Those who complied, did so by paying in, mostly, the notes of suspended banks—very little specie was paid in—not more than $800 or $1.000. The new stockholders, among whom was McDougald, put in their notes in the place of those from whom they purchased. The board of directors then ordered about $250.000 of bills to be issued. Order to issue means preparing the bills for circulation. The largest portion of the bills were put in circulation, but could not tell how much ; could not identify any of the bills shown or put in circulation; has no reason to believe they were put in circulation, but that they are now shown to him. Many of the bills put in circulation, were returned and re-issued, but how many witness cannot state ; does not know that any prepared for circulation had been lost or mislaid, or deposited with the Bank of Columbus, or with John L. Mustian; does not know whether there was a deed of assignment to R. B. Alexander. Alexander commenced to act as assignee in the Spring of 1843. Defendant then offered to prove by the witness, that Alexander, while he was assignee, declared and alleged, that he acted under the deed of assignment, and not under the Act of the Legislature; that he accepted under the deed, not under the Act of the Legislature. Plaintiff objected; the Court sustained the objection. Defendant thereupon excepted. Witness also proved that the transfer to defendant, of 38 shares of the stock of the bank was on the transfer book before he was elected director and president. Plaintiff then read in evidence the bills mentioned in the declaration. He also read in evidence, an exemplification of the record of a declaration judgment, and execution and return of *nulla bona* by the Sheriff. This exemplification showed the number of bills sued on, their amounts and dates of their signature, but did not specify them by number or letter. The defendant objected to said exemplification being read in evidence, except to prove the

judgment and return of *nulla bona;* and that the recitals in
the declaration against Alexander, assignee, was no evidence
of the identity of the bills sued on. The Court over-ruled
the objection and permitted said exemplification to be read
as evidence of the identity of said bills sued on, to which said
defendant excepted. The plaintiff here rested his case, and the
defendant then introduced SEYMOUR R. BONNER, who testi-
fied that he was one of the original stockholders and directors
in said Planter's & Mechanic's Bank, in the year 1837; and
that John Banks, S. A. Bailey and H. S. Smith were a com-
mittee to make arrangement with the bank of Columbus; and
he was informed that a specie arrangement had been made
with the Bank of Columbus by the committee. The directors
went to see if there was a certain amount of specie at their
control in the Bank of Columbus. Davis, the cashier, said
there was there $226 or $230.000 on deposit, subject to
their control, and belonged to the Planter's & Mechanic's
Bank; that he, Davis, had arranged with the Insurance
Bank for the balance, and that he had a certificate to make
up the deficit. I knew nothing of the arrangement but what
one of the committee told me. The Planter's & Mechanic's
Bank had no banking house at that time, or place for specie.
The $226 or $230.000 was all the specie in the bank of Co-
lumbus. Specie was then at a premium of from 5 to 8 per
cent. No premium was paid for the specie certificates as wit-
ness knew of. The stockholders paid into the Bank of Co-
lumbus, bank-bills and promissory notes, discounted in that
Bank, and Davis gave the directors, for them, the specie cer-
tificates. Both of the certificates were deposited in the Bank
of Columbus by the directors, after their election, and they
had called for the specie. The Planter's & Mechanic's Bank
was credited with the amount of them. Witness, on the sub-
ject of the disposition of the capital thus paid, corroborated
the testimony of Ragan. The directors did not go to the In-
surance Bank. The witness further testified, that after the
failure of the Planter's & Mechanic's Bank, he bought a

large quantity of the bills of the bank, and had sold some of them; that before the commencement of this suit against Alexander, and before the commencement of this suit, he had placed $1500 of the bills of the bank, in the hands of Wm. Dougherty, as his Attorney, for collection; that he was to pay all costs and expenses, and to collect the one half for the other; and that said Dougherty informed him, a day or two before this trial, that said bills were sued for in the name of this plaintiff, Lane, and embraced in the present suit. The plaintiff, by his Counsel, Wm. Dougherty, did not object to this testimony. Bonner proved that Hines Holt was not a director in 1837, when the letter was written to the Governor enclosing the affidavit of president and directors. The defendant then offered to prove by Hines Holt, that Alexander repeatedly declared and asserted, while acting as assignee, that he acted under the deed of assignment, and not under the law. This testimony was objected to, and the objection sustained; and thereupon, the defendant excepted.

The plaintiff also read in evidence a copy of a letter and affidavit, sent by the directors, upon the organization of the bank, to the Governor of the State, stating that the bank had collected, in specie, $250.000, as required by the charter, and were ready to proceed to organize.

The Court, amongst other things, charged the Jury, that although they might believe, from the testimony, that the original organization of the P. & M. Bank was not in conformity with the charter, but done to evade the law; and although they might believe that said Bonner was a director and stockholder in such bank, aiding such organization; and although they might believe, that at the commencement of this suit, Bonner was the owner of fifteen hundred dollars of the bills sued upon, and read in evidence, if they should believe, that in the organization of 1837, Bonner was a director, and that no bills were issued then; and subsequently, in 1838, there was another election of directors; and after this, the bills sued on were put in circulation by the bank, the plaintiff was entitled to recover on Bonner's bills, unless it was shown that Bonner

was a director when the issue was made.   To this charge defendant excepted.

The Court was requested to charge, that if there was no evidence before the Jury of the identity of the bills, except the exemplification referred to, that the plaintiff could not recover.   The Court refused so to charge, and defendant excepted.

The Jury found a verdict for plaintiff; whereupon, Counsel for defendant moved the Court to require the Attorney of plaintiff to deposit said bills in the office, or to leave copies of the same.   The Court refused the same, and defendant excepted.

On these several exceptions, error was assigned.

H. HOLT; S. JONES; B. HILL, for plaintiff in error.

W. DOUGHERTY, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

By written agreement between the Counsel in this cause, it was stipulated, that the argument should be confined to certain specified points; and that a decision on any other of the grounds of error presented by this record, should be waived.

The points presented are the following :

1. The refusal of the Court to compel the plaintiff's Counsel to testify as a witness.

2. So much of the decision as sustained the demurrer to the 4th and 7th pleas.

3. The admission of the record of the suit against the bank in evidence, and over-ruling exceptions to the exemplification thereof.

4. The error alleged in the charges given and refused.

5. In refusing to compel the plaintiff to deposit the bills upon which suit had been brought.

[1.] We think that the Court erred in not permitting Mr.

Dougherty to be sworn, for the purpose of proving the service of a set of interrogatories upon him.

It cannot accurately be said, that the information here sought, was in the nature of "a matter or thing acquired from his client, or during the existence and *by reason of the relationship* of client and Attorney," according to the terms of our Statute of 1850.

The fact sought to be proven was, that a copy of the interrogatories had been left at Col. Dougherty's office, 60 days before the Court. Now, it did not certainly appear, that this fact could have been known to Col. Dougherty only by reason of his relation as Attorney to his client. His clerks or others, in or about the office, might have had as accurate knowledge of the fact as Col. D. If so, it need not have been by reason of his relationship to his client, that the knowledge was obtained by him; and if not, he was not rendered incompetent by the Statute.

[2.] The next point made, is as to the decision of the Court below, upon the demurrer to the 4th plea. In which decision, the Court held that the bills issued by the Planter's & Mechanic's Bank of Columbus, were not illegal and void, notwithstanding that twenty-five per cent. of the capital stock of said bank had never been paid in specie at any time, before or after said bills were issued; and that they constituted a good demand against the stockholders.

We are impressed with the opinion, that this question is a very simple one, and that any other doctrine than that held by the Court below, would be a monstrous outrage on reason and justice; because, unless the complicity of the bill-holder with the banking corporation, illegally emitting bills, was shown, to sustain such a plea would be to allow such a corporation to take advantage of its own most gross and fraudulent wrong. This is reason enough for our opinion.

It may be true, and probably is so, that this bank was not legally organized, because that twenty-five per cent. in specie, was never paid in, as the terms of the charter required. It may be true, that for this reason, a stockholder might have

resisted the payment of an instalment of stock, or a debtor his liability to the bank, (if the rights of third persons were not affected thereby,) and that the State might, at any time, have proceeded to revoke the corporate franchises of this bank.　But this is a very different question from the right of a corporation to avail itself of a denial, that it ever possessed corporate franchises, in order to evade payment of just debts, which had been contracted with an innocent creditor, by virtue of its assertion and declaration, that it possessed these very corporate rights.　In such a case, where the issue was between a corporation and those who innocently held, for a valuable consideration, its promises to pay, it certainly would be estopped to deny its authority to contract, in any Court of Justice in wide Christendom.

It is not, however, every case in which a debtor to a corporation, thus illegally or irregularly organized, would be allowed to resist the payment of a debt, in good faith contracted with him; nor every case in which the State might rightfully forfeit a charter, where the bank had not proceeded to organize regularly, or had obtained its charter deceptively. In some such cases, it has been held, that the charter "could not, in a collateral action—in an action brought by the company, to compel the performance of contracts entered into with it, be declared void."　The reason given is, that "the State may waive the right to exact the forfeiture, or declare the charter void, because obtained by deception."　*The President of the Kishacoquillas & Con. Turnpike Co. vs. Mac. Conaby*, (16 *Serj. & R.* 144.)

A decision, similar in principle, has been made by the Supreme Court of New York, in the case of *Spear vs. Crawford*. (14 *Wend.* 24.)

In a somewhat similar case, *Minor et al. vs. The Mechanic's Bank of Alexandria*, (1 *Pet.* 65,) Judge *Story* held, that "it would be difficult to maintain that a collusive subscription got up between the original subscribers and the commissioners, for the purpose of evading such a claim, could be permit-ted to be set up to the injury of the *subsequent purchasers of*

*the stock*, who became *bona fide* holders, without participation in or notice of the fraud." In such event, he says, "the law would hold the parties bound to their subscription and compellable to comply with all the terms and responsibilities imposed upon them thereby, in the same manner as if they were *bona fide* subscribers."

If such reasoning and such decisions be correct, and so we believe them to be; if the debtor to a corporation, in an action by the corporation against him, for the debt, cannot be allowed, collaterally, to set up such illegal or deceptive organization; and if such an organization cannot be pleaded to the injury of a stockholder, subsequently and in good faith purchasing; *a fortiori*, it cannot be set up by the corporation itself, when sued by a bill-holder, in good faith.

If the corporation cannot set up such a plea in such a case, then it is liable to pay the bills so held; and if it be liable, the stockholder who is bound for the ultimate redemption of the bills, must, in his turn, be liable: because his liability is an incident to the liability of the corporation.

It can be shown, we think, that the decision by the majority of the Court, in the case of *Hayne vs. Beauchamp*, (5 *Smead & M.* 515,) is not in conflict with the views we have just presented. But we will not pause to criticise that case. If it be not in accordance with these our views, it is, in our opinion, wrong.

Many other cases were cited by the Counsel for the plaintiff in error, for the purpose of showing that the stockholder was not liable to pay these bills, because of the fraudulent organization of this bank. Such cases as *Dana vs. B'k U. S.* 5 *Watts & S.* 245. *Crooker vs. Crane*, 21 *Wend.* 212. *Highland Turnpike Co. vs. McKean*, 11 *John.* 98. *Hibernia Turnpike Co. vs. Henderson*, 8 *Serj. & R.* 219. *Craig et al.* 4 *Pet.* 410. *Collins vs. Blanton*, 2 *Wils.* 347.

But these cases fall far short of establishing any such doctrine. They do show, that a Court of Justice will not lend its aid to a man who founds his cause of action upon an immoral or illegal act, if he were a party to that wrongful act. But

none of the cases go the length of holding, directly or in principle, that an innocent holder of a bank bill, issued by a bank asserting the right to the exercise of a corporate franchise, shall not be allowed to collect the same out of that corporation, if, indeed, the bank was fraudulently exercising such franchise.

The rule sustained by these cases is, that an action will not, under such circumstances, be sustained against the bank, if the creditor was *particeps criminis*, or in any way concerned in the fraud. " If, from the plaintiff's own stating or otherwise, the cause of action appear to arise *ex turpi causa*, or the transgression of a positive law of his country, there, the Court says, he has no right to be assisted. It is upon that ground the Court goes, not for the *sake of the defendant*, but because they will not lend their aid "to *such a plaintiff*." Lord *Mansfield*, in *Holman vs. Johnson*, (*Cowp.* 343.)

[3.] It is also our opinion, that the Court was right in sustaining the demurrer to the 7th plea, and in holding that the liability of the stockholder for the redemption of the bills as provided for by the charter, was not secondary and collateral to that of the directors, for excess of debts contracted.

By the 4th regulation of what the Legislature declared should be " fundamental articles of the Constitution of said corporation," it was provided, that " in case of excess, the directors under whose administration it shall happen, shall be liable for the same in their private and individual capacities, and may be sued for the same in any Court of record in the United States, by any creditor."

The directors are thus made liable, equally, jointly and severally, with the corporation, to pay such excess. They may be sued, therefore, in the first instance, and they may be sued at the same time with the bank, or afterwards. But there is nothing in the charter, requiring that they *shall be first* sued, or, indeed, that they *shall be sued* at all. The provision is, that they " *shall be liable*, in their private and individual capacity, and *may be sued* for the same," &c. It is, therefore, left optional with the bill-holder, whether or not he will sue

the director.   And the language of the charter makes it necessary that the bill-holder shall sue and exhaust the property of the corporation *only*, before he can sue the stockholder.

[4.]  The exemplification of the record in the case of this plaintiff, against Robert B. Alexander, assignee, was properly admitted as evidence of the identity of the bills upon which suit was brought.   It does not furnish full and satisfactory proof to this effect, it is true, but it seems indisputable that, when it is taken in connection with all the circumstances before the Jury, and especially with the fact, that the bills came from the custody of the Counsel who was the Attorney of record in the Court below, *some* presumptive evidence was thus afforded that the bills just declared upon, were the same which had been before the Court in the first case—the strength of which evidence was for the Jury to determine.

[5.]  The point next made, is upon the charge of the Court, to the effect, that though Mr. Bonner (the real owner of the bills in question) might have been aiding in the organization of said bank in 1837 ; and although such organization might not have been in conformity to the charter, yet, if no bills were then issued, and if he were not a director at the time the bills were issued on which suit is brought, the plaintiffs are entitled to recover.

What we have already said, is sufficient to suggest the error of this charge.   The course of reasoning which has been pursued, and which has shown, that an innocent bill-holder, not participating in the fraudulent organization of the bank, is entitled to recover against the same, notwithstanding such fraudulent organization, has also clearly shown, that if the bill-holder did take part in such unlawful organization, he cannot enforce an action on his bills; for a Court of Justice will not lend its aid to " such a plaintiff." If, therefore, Seymour R. Bonner participated in the illegal organization of this bank in 1837, and in an unlawful and deceptive return to the Governor, as to the amount of specie which had been paid in, thus aiding and enabling unlawful issues to be made; and if he knew that such issues, subsequently made, were unlaw-

ful, because that twenty-five per cent. of the capital stock had not been paid in specie before said returns were made, he should not be allowed to recover on these bills, and the Court should have given the Jury instruction to this effect.

[6.] The last point which we have been asked to decide in this case, is made upon the ruling of the Court on the motion to require the plaintiff's Attorney to deposit the bills sued on in Court.

Such an order would have been premature,. we think, if granted before final judgment or payment of the bills. The reasons assigned for it apply only to such a state of the case; and no reason can be given, we think, why such an order would have been sooner required, whilst there are many reasons why the plaintiff should have the control of his bills, until final judgment on them, or payment of them. We therefore approve the decision of the Court on this point.

Let the judgment be reversed, for the reasons stated.