The first objection made to the recovery in this case is, that no promise to pay for the stock is either averred or proved. The defendant subscribed twenty shares to a paper, the terms of which were as follows:
[The learned judge here stated the language of the subscription.]
There can be no doubt that an agreement to take a certain number of shares of the capital stock of an incorporated company creates an obligation to pay for the shares so to be taken. In respect to this, it can hardly be necessary to do more than to refer to the cases of Spear v. Crawford (14 Wend., 20);The Northern Railroad Company v. Miller (10 Barb. S.C.R.,
260); The Hartford and New Haven Railroad Company v. Kennedy
(12 Conn., 500). I have no hesitation in adopting the conclusions arrived at in those cases upon this point. In the first two, the language of the subscription was substantially identical with that used in this case; *Page 351 
and in the last, terms still less explicit were held to import an agreement to pay for the stock.
But it is insisted that the promise to pay, if any exists, arises by implication alone, and that to give a common law remedy by action, in addition to the statutory remedy by forfeiture provided by the charter, it is necessary that there should be an express promise. To this it may be answered that it is by no means clear that the promise is to be regarded as implied merely. On the contrary, as I understand the distinction between express and implied promises, that existing in this case belongs to the former class. An express promise is one which is expressed in words. No particular form of words is essential to such a promise; but if the language used, when fairly interpreted, imports an undertaking to pay, this, I apprehend, constitutes an express promise. The letters I.O.U., which have been held to amount to a promissory note, constitute an express promise no less than if the words "I promise to pay" had been used. An implied promise, on the other hand, is one which is not deduced from the language of the party, but which the law raises upon principles of equity and justice, in view of some consideration received. In this case a promise to pay is necessarily embraced in the agreement to take stock, subject to the "liabilities of the charter." As there was no way in which the defendant could take stock agreeably to the charter without paying for it, an agreement to take of course included a promise to pay, and this I apprehend must be considered an express promise.
If, however, it be considered as belonging to the class of implied promises, the consequences would be the same. I am not aware of any distinction, so far as the remedy is concerned, between an express promise and one which exists by implication of law. The promise being once raised, the obligation imposed is as binding and effectual in one case as in the other. The precise point made here was fully considered in the cases of TheHartford and New Haven *Page 352 Railroad Company v. Kennedy and The Northern RailroadCompany v. Miller (supra), and overruled in both. In the former case, Huntington, J., says: "But if the 13th section provides the only remedy to enforce the payment, and therefore excludes an implied promise, it is not readily perceived why it should not cause an express promise to be legally inoperative. There is no other consideration to support the latter than that which sustains the former. It is precisely the same in both. The moral obligation to pay is equally strong in both." In the other case, Mr. Justice Willard holds similar language. He says: "There can no case be found where the courts of this state have made any distinction between an express and an implied promise with reference to the question we are considering. They both plainly stand upon the same footing. If an action will lie in the one case it will in the other."
I entirely concur with these learned judges, and can see no foundation whatever in principle for the distinction attempted to be made. The doctrine of the numerous cases in which it has been held that an action at law will lie upon such a subscription, notwithstanding a clause in the act of incorporation providing for a forfeiture of the stock in case of non-payment, is, that the remedy by forfeiture is cumulative merely, and does not operate to take away any other remedy afforded by the common law. It clearly can make no difference in the application of this doctrine, whether the promise, upon which the common law remedy by action is founded, be express or implied.
The next objection is, that there was no consideration for the promise, and no mutuality in the agreement. It may, perhaps, be conceded that, in that class of cases in which the existence of the corporation is made to depend upon certain conditions precedent, a subscription made before the performance of the preliminary conditions would, upon strict common law principles, be of no validity until the incorporation was perfected. Nothing can be more *Page 353 
clear than that, by the common law, there must be at least two parties to every contract. No promise is binding unless made to some competent person, either natural or artificial. There must be a promissee as well as a promissor. In the case supposed, as the corporation would have no legal existence at the time of the subscription, it could not be the recipient of a promise. If, therefore, we reason from the principles of the common law alone, such a subscription would be invalid, and might be withdrawn at any time before the completion of the incorporation. But, in such a case, if the party subscribing suffers his subscription to remain unrevoked until the incorporation is perfected, I see no reason why his subscription does not, upon ordinary principles of law, become obligatory. He would be in a position analogous to that of one who had made a proposition which had remained for a considerable time unanswered, and which he might at any time have recalled, but which he had suffered to stand unrevoked until it was accepted by the other party. It would then be too late to recede. The case of Stanton v. Wilson (2 Hill, 153) is a case substantially of this description. There the court held that the contract took effect on the day when the corporation came into existence, although the subscription was made long before; and I see no reason why the principle adopted in that case is not applicable here. There was, it is true, no corporation formed when the defendant subscribed, and consequently no consideration then for his promise, nor mutuality in the contract. But the corporation came into existence, by the terms of the charter, as soon as the stock was distributed. When a subscription is made to the capital stock of an existing corporation, if the corporation accepts the subscription, it no doubt impliedly undertakes that the subscriber shall have and enjoy a share of its property and franchises, corresponding to the amount of the subscription. So in the present case, the law would raise by implication such a promise on the part of this corporation *Page 354 
the instant it was brought into existence; and as the defendant had suffered his subscription to stand unrevoked up to that time, it was the same in effect as if then for the first time made. In this way both mutuality and a sufficient consideration are shown.
But there is another view of the question, which would seem to render it unnecessary to resort to this reasoning in order to establish the liability of the defendant. The rules of the common law, in regard to consideration and mutuality, do not apply to the case. Those rules may, I think, be regarded as superseded by the statute, which not only expressly authorizes subscriptions to be made in anticipation of the existence of the corporation, but impliedly, at least, recognizes their validity. Section 4 of the act by which the plaintiffs are incorporated provides, among other things, as follows: "And the said commissioners shall, at the time of any subscription, require the payment to them, by the person or persons subscribing, of five dollars towards and upon every hundred dollars so subscribed, and unless the same shallbe paid the subscription shall be invalid." This plainly implies that if the required payment is made the subscription shall be valid. But even without this clause it would, I think, be held that a statute which authorizes subscriptions in view of a subsequent incorporation, and regulates the manner in which they shall be made, must necessarily have the effect to give validity to such subscriptions, if made in accordance with the requirements of the act.
The point made by the defendant upon the alteration of the plaintiff's charter, changing the name of the corporation and authorizing the extension of its road from Attica to Buffalo, must, I think, be considered as sufficiently answered by the decision of this court in the case of The Schenectady andSaratoga Plank Road Company v. Thatcher (1 Kern., 102). The power reserved to the legislature in the original act of incorporation, to alter or repeal the act *Page 355 
is as broad in this case as in that. It is, indeed, entirely unlimited. Under the rule established in that case, no mere addition to or alteration of the charter, however great, would operate to discharge a stockholder from his obligation to the corporation. To work such a discharge the charter must be replaced, or the legislation must be such as virtually to subvert the corporation itself; or, at least, to destroy its identity. A mere change of name has been repeatedly held not to have that effect. (Mayor of Scarborough v. Butler, 3 Lev., 238;Mayor of Colchester v. Seaber, 3 Burr., 1866; Mellor v.Spateman, 1 Saund., 344, note 1; Overseers, c., of NorthWhitehall v. South Whitehall, 3 Serg. Rawle, 117.) In other respects the change in this case is not materially greater than in that of The Schenectady and Saratoga Plank Road Company
v. Thatcher (supra). It does not become necessary, therefore, to take into consideration the soundness of the principles advanced in the case of The Hartford and New Haven RailroadCompany v. Croswell (5 Hill, 383). That case is in direct conflict with several English cases, as well as with some decided in this country; and a portion of its reasoning would, I think, require to be examined with some care before it is finally adopted. (Midland Railway Company v. Gordon, 16 Mees. Wels., 803; Stevens v. The South Devon Railway Company, 13Beav., 48; Ffooks v. The London and South Western RailwayCompany, 19 L. Eq. R., 7; Irwin v. The Turnpike Company,
2 Penn., 466; Gray v. The Monongahela Navigation Company, 2Watts Serg., 156.)
The defence set up at the trial connected with The Buffalo, Corning and New-York Railway Company was properly overruled. The bad faith offered to be proved was that of persons who, although officers of the Attica and Hornellsville Railroad Company, were nevertheless not acting in behalf and by the authority of that company, but as individuals. Again, a fraudulent misrepresentation, by which the defendant was induced to subscribe to the stock of *Page 356 
another company, could not discharge him from his obligations to the Attica and Hornellsville Company, nor could any misconduct of the latter company, by means of which the defendant was injured as a stockholder of such other company, have that effect.
The judgment of the supreme court should, I think, be affirmed
Judgment affirmed.