## (*) CHAFFIN *versus* CUMMINGS.

An execution against a Rail Road Company may be levied upon the property of an owner of shares to the amount of his stock, for debts contracted during his ownership.

To the validity of a levy made on such an execution upon the property of an individual, it must appear —

I. That he was a share holder to the amount levied. —

*It is not necessary, however, that such fact be shown by the corporation records or by the officer's return. It is provable by parol.*

II. That the levying officer, forty-eight hours before the levy, gave him notice of the amount of the debt and of an intention to make the levy. —

*It is not requisite, however, that the levy be made at the end of the forty-eight hours. A levy was sustained, though not made till twenty-four days after such notice. Neither will such notice become ineffectual by an intermediate payment of a part of the debt.*

III. That there was no attachable property of the corporation. —

*Held, that the levying officer's return upon the execution, that he cannot find such property, is conclusive evidence that there was no such property.*

In a controversy as to the validity of such a levy, it is not competent for the stockholder to object that the creditor had reserved and secured usurious interest in his contract with the corporation.

ON REPORT from *Nisi Prius*, HOWARD, J., presiding.

WRIT OF ENTRY for possession of a tract of land.

The land formerly belonged to the demandant.

It is, however, claimed by the tenant under a levy to himself, on an execution, issued upon a judgment of $2449,46, which he had recovered, on contract, against the Buckfield Branch Rail Road Company, of which company the demandant was alleged to be a member. The land was set off at the appraised value of $1000.

The demandant offered to prove that, in the contract between the tenant and the Rail Road Company, usury was reserved and secured by the tenant. This evidence was excluded.

To show that the demandant, at the time of the contract between the Rail Road Company and the tenant, was the owner of shares to the amount of $1000, the tenant introduced evidence having some tendency to prove, *that* the demandant, before the organization of the Company, had subscribed to "take and fill" shares to that amount; *that* he attended the meeting to organize the Company; and *that* he had admitted his ownership of stock to said amount. But no record of the corporation was found, showing that he had ever been a stockholder.

The demandant then contended, that by reason of certain defects in the proceedings, the levy passed no title.

1. That the levying officer does not state in his return that the demandant was an owner of stock.

2. That the notice required by the statute does not appear to have been to the demandant as owner of stock.

[MEMO. — The provision of the statute is, that the officer may cause the property of the stockholder to be levied upon, "after giving him forty-eight hours previous notice of his intention to levy, and of the amount of the debt or defi-

ciency, unless the stockholder shall show to the creditor or officer, attachable corporate property or estate."]

On this point the officer's return is as follows:—

" On the 4th day of April, 1851, I notified the following persons, stockholders in said corporation, to wit: Rodney Chaffin, (and twenty-one others,) by giving to each of them verbal notice of the amount of the debt, to wit: of the amount of the within execution, and of my intention to levy the within execution upon their several individual property, rights, credits and estate, to the amount of the stock owned by them severally in said corporation, unless they should on demand and notice aforesaid, disclose and show to the execution creditor, within named, or to me, as an officer, attachable corporate property or estate belonging to the said corporation, sufficient to satisfy the within execution, and all fees; and now, forty-eight hours from and after the time of giving the notices as aforesaid, to each and all of said stockholders above named, has expired, and they each and all have neglected to disclose and show to me, as an officer, or to the within named execution creditor, attachable corporate property or estate, belonging to the said corporation, sufficient to satisfy the within execution and all fees."

After the giving of that notice, and before the levy, which was on the 28th of April, some of the other stockholders paid to the officer some considerable sums upon the execution.

3. That the company itself had attachable property.

In this respect the demandant offered to show, that, at the time when the levy was made, the Rail Road Company were the owners of a right in equity to redeem their road and franchise from a mortgage, which they had given to Francis O. J. Smith, for $35,000, and that the same being attached, prior to the tenant's levy, on a writ in favor of Porter and Benson, was sold after the levy, upon an execution issued on the judgment, which they recovered in their suit, for the sum of $6005.

On this point, the officer returns that he had " made diligent

search for corporate property or estate, belonging to the within named Buckfield Branch Rail Road Company, wherewith to satisfy the within execution, and having demanded the same of Stephen Emery, as treasurer of said corporation, wherewith to satisfy the same, I have first ascertained and hereby certify, that I cannot find corporate property or estate belonging to the said corporation."

The cause was thereupon taken from the jury, by agreement of the parties, with authority for the Court to enter judgment upon nonsuit or default, or to order a new trial, as justice may require.

*May,* for the demandant.

1. There was no competent evidence that the demandant, whose land was taken, was ever a stockholder.

No book nor record of the corporation exhibited such an ownership. And the levying officer dared not to certify it, though his return should state all the facts necessary to establish title.

If the demandant was a stockholder, there must have been recorded evidence to show it, and by such evidence, being in its nature of a higher grade, the fact ought, by the rules of law, to be proved.

But the parol evidence, even if admissible, was insufficient to show such an ownership, even to the amount of a single dollar; and especially was it insufficient to show ownership at the time the plaintiff's usurious debt was contracted.

2. Between the time at which the officer notified the demandant of the amount of the debt, and the time of the levy, he had collected a large part of the execution, some by levies on the property of stockholders, and some by payments made in cash. Thus, when he levied the demandant's land, a much smaller sum was due than that of which he notified the demandant. In such case it was the officer's duty to give him a new notice of the balance due. To pay a balance so reduced, he might have shown sufficient property of the corporation.

3. The levy, if made at all, must be made immediately

after the lapse of the forty-eight hours notice of the intent to levy, for want of corporate property.

The certificate of such want of corporate property has relation to that time. It nowhere appears by the officer's return or otherwise, that on the day of the levy, the corporation had not an abundance of attachable property to pay its whole debts.

4. We next say, that the right to take individual property for corporation debts is only given in case of deficiency of attachable corporate property or estate. If such property does exist, then no proceedings can authorize the officer in any case to seize that of the individual. His right to seize such property does not depend upon the officer's return, but upon the fact. Stat. c. 76, § 18. The report in this case shows, that, notwithstanding the return of the officer, the corporation had attachable estate, to wit: a right in equity to redeem their road and franchise from a mortgage held by F. O. J. Smith, or rather that the plaintiff offered to show this, and that it subsequently sold in Feb. 1852, for six thousand dollars. The officer's return upon this point is not conclusive, because his right to act at all in seizing individual property depends upon this fact, and without such deficiency of attachable corporate estate, he has no right or authority to make such certificate. In other words, the jurisdiction of the officer, so to speak, depends upon the fact of such deficiency of corporate estate, and without that all his acts and return in reference to a stockholder are merely void. This case, therefore, differs from that class of cases where the acts of an officer come within the range of his duties, inasmuch as without an actual deficiency of corporate estate he has no right to proceed. Should it be said that this right was subject to an attachment of Porter & Benson for its full value, we reply that a creditor before taking individual property should have waited until that right was sold, and then proceeded and sold the company's right to redeem from that sale. If the corporation have corporate attachable property, the right to take individual

property does not exist, nor is the case at all altered by the statute, if that property happens to be at the time in a con-dition that it cannot be seized and levied upon at once. If the corporation have property that is in its nature attach-able, it must first be disposed of and appropriated according to law, before the individual stockholder can be made to pay, or his property be subjected to be taken in execution. It is the evident intention of the statute, that the stock-holder shall be liable only in the last resort. We say, therefore, that it being apparent, (for what is offered to be proved by the demandant must be taken as proved,) that the corporation had attachable estate to the value of six thousand dollars when the defendant made his levy, that levy could give him no rights; it was premature. It could not then be told whether Benson & Porter would obtain judg-ment, and if they did, whether they would levy on the road and franchise. It would most clearly be an interpolation of the statute to require the attachable estate of the corporation to be unincumbered or liable to be immediately levied upon or sold.

5. The debt of the defendant was usurious to a large ex-tent, as we offered to prove. The statute never could have contemplated that stockholders should be individually liable for debts, the creation of which the statute forbids. The defendant cannot shield himself under his judgment, against the *corporation*, against the well founded complaints of the *stockholders*, that the debt to which he is in the last resort made a party, was not honestly and *bona fide* due. It would be a reproach to the law if it were so. It would be against the policy of the law to subject the minority in a corpora-tion to the deprivation of their property, from an unlawful exercise of power on the part of the majority.

The stockholders should have the power somewhere to resist such legal injustice and extortion; and although the corporation, as such, might be estopped after judgment to say that it was usurious; still the stockholder, who by force of the statute is made a party to that judgment *without no-*

*tice,* should have the power to look into the legality of de-
mands. In the case before the Court, the levy upon the
plaintiff's property, has connected him with the judgment,
and gives him a right to look into it. *Rankin* v. *Sherwood,*
33 Maine, 509 ; *Merrill* v. *Suffolk Bank,* 31 Maine, 57.

*Cummings* and *Shepley & Dana,* for the tenant.

SHEPLEY, C. J. — The tenant claims title to the land de-
manded, by levy thereon of an execution, issued on a judg-
ment recovered by him against the Buckfield Branch Rail
Road Company.

It is provided by statute, c. 76, § 18, that " in case of
deficiency of attachable property or estate, the individual
property, rights and credits of every stockholder thereof,
shall be liable to be taken on execution, to the amount of
his stock and no more, for all debts of the corporation con-
tracted during his ownership of such stock."

The debts, upon which the judgment was recovered, ap-
pear to have been contracted by the corporation during the
months of August, September and October, 1849.

The first question presented is, whether the demandant
was the owner of stock in the corporation, when the debts
were contracted. He was one of the persons named in
the Act of incorporation, approved on July 22, 1847. The
Act being made a public one by statute, did not become
operative until thirty days had elapsed after the close of
that session of the Legislature on August 3, 1847. He
would not become an owner of stock, by being named in
the Act as one of the corporators.

A paper entitled " Subscription to Buckfield Branch Rail
Road," bearing date on August 21, 1847, and containing
certain stipulations, was signed by the demandant. Among
them was the following ; — " the undersigned hereby agree
to take and fill the number of shares set against their names
respectively, in the capital stock of the Buckfield Branch
Rail Road corporation, on the terms and conditions follow-
ing." There can be no doubt, that this paper had reference

to the corporation, whose future legal existence had been provided for. The demandant appears to have attended a meeting for the organization of the corporation, and to have taken a part in the proceedings; to have stated to one of the appraisers, when the levy was made, that he was the owner of ten shares of the stock, and that he had paid for them; to another person at another time, that he had taken a thousand dollars in the stock, and had worked more than that; to have made a settlement with the treasurer of the corporation, on May 12, 1851, allowing the amount of ten shares of its stock to be deducted from his account against the corporation.

A person, who before its organization, subscribes for stock and afterwards claims to be a stockholder, and acts as one in meetings of the corporation, and whose claims are admitted by it, by allowing him to act as such, and by receiving payment for his stock, must be regarded as the owner of the stock thus subscribed for and acted upon. *Chester Glass Co.* v. *Dewey,* 16 Mass. 94; *Spear* v. *Crawford,* 14 Wend. 20; *Kidweller Canal Co.* v. *Raby,* 2 Price, Ex. R. 93; *Kennebec & Portland R. R. Co.* v. *Palmer,* 34 Maine, 366. To make him an owner, it is not necessary that he should have paid for his stock. A corporation may give credit for its stock, as well as for any other property sold by it. Nor is it necessary that certificates should have been issued. These only constitute proof of property, which may exist without them. When the corporation has agreed, that a person shall be entitled to a certain number of shares in its capital, to be paid for in a manner agreed upon, and that person has agreed to take and pay for them accordingly, he becomes their owner by a valid contract, made upon a valuable consideration.

It is insisted, that parol evidence cannot be received, to prove that a person has become the owner of shares; that the records or books of the corporation are the only legal evidence of that fact, and the case of *Stanley* v. *Stanley,* 26 Maine, 191, is relied upon as having so decided. That

case decides, that the transfer of stock from one person to another, is by statute required to be entered upon the books of the corporation, before it can be effectual to discharge or incur certain liabilities, and that the transfer can be proved only by the books; not that a title to stock originally acquired from the corporation should be so proved.

The decision upon the facts, as well as the law, being submitted, the Court cannot but conclude, that the testimony introduced is sufficient to prove, that the demandant was an owner of ten shares of the stock, when the debts, on which the judgment was founded, were contracted by the corporation.

It is further insisted, that the tenant did not acquire any title by the levy, on account of defects in the proceedings.

The first alleged defect is, that the officer does not state in his return, that the demandant was an owner of stock. No provision of a statute has been presented or is known, requiring that all the facts necessary to constitute a title to real estate, should appear of record. When such titles are acquired by the enforcement of liens created by statute, they may be established without full proof from records. An officer cannot be required to state in a return of his official doings, any act not performed by him, or any fact not officially known to him, unless required by law so to do. Although the statute requires the clerks of corporations to communicate to him information respecting the ownership of stock, it does not make it his official duty to ascertain and determine who are owners. He could not be held responsible for the truth of any such statement, and cannot therefore be required to make it.

Another alleged defect is, that the notice required by the statute does not appear to have been given to the demandant as the owner of stock.

The provision of the statute is, that the officer may cause the property of the stockholder to be levied upon, "after giving him forty-eight hours previous notice of his intention, and of the amount of the debt or deficiency," unless the

stockholder shall show to the creditor or officer, attachable corporate property or estate.

The amount due when the notice is given is to be stated, and a payment made during the forty-eight hours, cannot destroy the effect of a notice given in strict conformity to the provisions of the statute, and deprive the creditor of the right secured to him by it, and require a new notice to be given. If such a construction were made, the corporation or a stockholder, might by payment of a very trifling sum, made once in forty-eight hours, occasion delay and expense for a long time, when the debt was large. No such construction is required to preserve the rights of the owner of stock. Any payment made after notice, will operate favorably for him. Nor will his estate be exposed for an indefinite time to be taken. The notice cannot be effectual, after the return day of the execution by virtue of which it has been made; and it is not perceived, that it can be injurious to the owner of stock to be allowed a longer time than forty-eight hours, during which he can avoid a seizure of his by showing corporate property.

Another objection made to the title of the tenant is, that the corporation appears to have had " attachable corporate property or estate," and that it is only in case of deficiency of such property, that the property of the owner of stock is liable to be taken.

The statute does so provide and it also provides, that his liability shall continue for one year after a record of the transfer of his stock, and for six months after judgment recovered in any suit commenced within that year, "provided, that in every such case the officer holding the execution shall first ascertain and certify upon such execution, that he cannot find corporate property or estate."

When this clause is considered in connexion with the other provisions, there can be little doubt, that it was intended to make the creditor's right to resort to the property of an owner of stock depend upon the officer's return, that he could not find corporate property or estate, and not upon

his ability to prove by other testimony, that no such property existed. If this were not the true construction, it would always be in the power of a corporation to protect the property of its stockholders from being taken to pay its debts, by keeping a small amount of attachable corporate property secreted, so that neither the creditor or officer could ascertain its existence.

The return of an officer respecting a duty expressly required of him, must be conclusive upon other parties of the fact that no corporate property or estate was to be found.

The proof of usury offered and excluded, if it had been offered by the corporation, could not have prevented the recovery of a judgment. It could only have diminished the amount recovered. This cannot be done collaterally.

*Demandant nonsuit.*

TENNEY, WELLS and APPLETON, J. J., concurred.