[In Bank.— August 30, 1883.]

ELANORA S. MITCHELL RESPONDENT, v. WILLIAM BECKMAN ET AL., APPELLANTS.

CORPORATION—BANK—STOCKHOLDERS.—The stockholders of a commercial banking corporation are primary debtors to the depositors, and are responsible co-ordinately with the corporation. The liability of the bank and of the stockholders commences at the same time.

ID.—STOPPAGE OF PAYMENT—RIGHT OF ACTION.—The stoppage of payment by a bank gives a depositor an immediate cause of action against the bank and the stockholders for the amount of his deposit.

STOCK—CERTIFICATES—UNPAID SUBSCRIPTIONS.—A subscriber for shares of stock of a corporation is responsible as a stockholder, although he has not paid for his stock or received certificates therefor. A corporation may give a subscriber credit for his stock as for any other property. Certificates of stock are mere evidences of property. The property may exist without the certificates.

ID.—TRANSFER OF ASSETS—DEPOSITOR—LIABILITY OF PURCHASER.—The Odd Fellows' Bank of Savings transferred its property to the Odd Fellows' Savings and Commercial Bank, which thereupon assumed all the liabilities of the vendor. The assets transferred were ample to cover the liabilities of the Bank of Savings. *Held*, that the Commercial Bank is liable to a depositor of the Savings Bank for the amount of his deposit.

EVIDENCE—IRRELEVANCY—IMMATERIAL ERRORS.—A judgment will not be reversed for the admission of irrelevant testimony, unless it appears that the court rested its opinion on such testimony.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order refusing a new trial.

On the 1st day of March, 1875, the plaintiff was a depositor in a savings bank styled Odd Fellows' Bank of Savings. On that day this bank entered into an agreement with another corporation styled the Odd Fellows' Savings and Commercial Bank, by the terms of which the former corporation transferred all of its assets to the latter, in consideration that the latter should assume the payment of all existing debts and liabilities. The plaintiff's deposit was, on that same day, and pursuant to this agreement, entered as a deposit credit upon the books of the Odd Fellows' Savings and Commercial Bank. On the 21st day of September, 1878, the Commercial Bank suspended payment. The defendants were all subscribers to its capital stock, but some of them had not paid the full amount of their subscriptions, and had not received certificates of stock. The other facts are stated in the opinion of the court.

*Geo. Cadwalader*, for Appellants.

The judgment in favor of plaintiff against the Odd Fellows' Savings and Commercial Bank was not evidence against the defendants; nor were the entries in the books of the bank. (*Moss* v. *McCullough*, 5 Hill, 131; *McMahon* v. *Macy*, 51 N. Y. 155; *Mokelumne Hill Canal Co.* v. *Woodbury*, 14 Cal. 265; *Davidson* v. *Rankin*, 34 Cal. 503; *Young* v. *Rosenbaum*, 39 Cal. 646; *Stilphen* v. *Ware*, 45 Cal. 110; *Heard* v. *Sibley*, 52 Ga. 310; *Tay et al.* v. *Hawley*, 39 Cal. 93.) The plaintiff's claim is barred by the Statute of Limitations. The statute begins to run in favor of a stockholder from the time when the debt was contracted. (*Witherhead* v. *Allen*, 4 Abb. Dec. App. 628; *Conklin* v. *Furman*, 57 Barb. 484; *Dodge* v. *Minnesota Co.* 16 Minn. 368; *Moss* v. *Oakley*, 2 Hill, 268; *Williams* v. *Hanna*, 40 Ind. 544; *Freeland* v. *McCullough*, 1 Denio, 426; *Larrabee* v. *Baldwin*, 35 Cal. 155; *Prince* v. *Lynch*, 38 Cal. 528.)

*Catlin & Hamburger,* and *Henry Edgerton,* for Respondent.

The right of action against a stockholder accrues at the same time as against the corporation. The right of action did not accrue until the date of suspension of the bank. (Morse on Banking, 2d ed. 40–42; *Davidson* v. *Rankin,* 34 Cal. 503; *Girard Bank* v. *Bank of Penn.* 39 Pa. St. 92; *Planter's Bank* v. *Farm. & Mech. Bank,* 8 Gill & J. 449; *Union Bank* v. *Planter's Bank,* 9 Gill & J. 439; *Howell* v. *Adams,* 68 N. Y. 315; *Stilphen* v. *Ware,* 45 Cal. 110; Morse on Banking, 31, 32; Thompson on Stockholders, 282; *Payne* v. *Bullard,* 23 Miss. 88; *Boardman* v. *Osborn,* 23 Pick. 295.)

Certificates of stock are only evidences of ownership. (*Payne* v. *Elliott,* 54 Cal. 342.) The judgment against the bank was competent evidence. (Freeman on Judgments, § 177; Thompson on Stockholders, §§ 326-337; *Larrabee* v. *Baldwin,* 35 Cal. 168; *Hahn* v. *Kelly,* 34 Cal. 403; *Young* v. *Rosenbaum,* 39 Cal. 646; *Stilphen* v. *Ware,* 45 Cal. 111.)

THORNTON, J. — So much of the opinion of Department Two, in this cause, as follows, is adopted as a correct exposition of the law herein:—

"The complaint in this case alleges that the Odd Fellows' Savings and Commercial Bank is a corporation, existing under the laws of California, ever since the 10th day of February, 1875, and organized for the purpose of carrying on a commercial banking businsss; that the defendants are subscribers to the capital stock of the bank in amounts specified in the complaint; that on the 21st day of December, 1878, the corporation above named was indebted to the plaintiff in the sum of $6,625.72, upon an account for so much money at and before that time had and received by the said corporation from the plaintiff to and for plaintiff's use, and at the special instance and request of said corporation, which sum said corporation thereafter, to wit, at the place and on the day last aforesaid undertook and promised to pay plaintiff when it should be thereunto afterwards requested; that plaintiff has recovered a judgment against the corporation for that amount, no part of which has been paid; that the defendants were at the time such indebtedness accrued

stockholders in the corporation named; that the corporation suspended all business and closed its doors on the 21st day of September, 1878, since which time it has not resumed business," etc.

The action is brought under the statute, and the allegations in the complaint are sufficient. The case has been argued at great length and with much ability, but it does not seem to us that the points involved are of difficult solution. The main leading facts are that the corporation (the bank) was doing a commercial banking business in the city of Sacramento; that the plaintiff deposited a certain amount of money in it which has never been repaid; that the plaintiff brought an action and recovered a judgment for the amount against the bank, which judgment remains in full force and effect. Whereupon plaintiff seeks to charge the defendants in this action, as subscribers to the capital stock of the corporation.

It appears from the evidence in the case, that plaintiff's money was originally deposited in the Odd Fellows' Bank of Savings as early as the year 1873, and that on the first day of March, 1875, an agreement was entered into between the two institutions above named by the terms of which all the assets of the last named institution were assigned and transferred to the Odd Fellows' Savings and Commercial Bank, and thereupon that institution assumed all the liabilities of the former bank. It is claimed that this assumption of the liabilities of the old bank by the new one was void for several reasons. But it is sufficient for us to say on this branch of the case, that the new bank received all of the assets of the old, which were sufficient, as appears from the evidence of Samuel Poorman, the president of both corporations, to satisfy all the debts of the old bank. He was asked by the court the following question : "Were all the assets transferred to the new bank, and were the assets sufficient to discharge the liability of the Odd Fellows' Bank of Savings?" Ans. "Well, I believe they were more than sufficient. I had been president of the Odd Fellows' Bank of Savings for a considerable time before that, and was president of the Odd Fellows' Savings and Commercial Bank for nearly three years after that, and was familiar with the assets and their values." It may be added, if anything more in this connection

is required, that the new corporation opened an account with the plaintiff, crediting her with the amount in her pass book as a deposit, and paid dividends on the same for more than three years. Of these dividends the defendants received their respective shares, in proportion to the number of shares subscribed for by them, and it is too late now for them to urge the defense of *ultra vires*.

Another point made in the case is that several of the defendants never paid for the whole amount of the stock subscribed for, and never received certificates therefor. But to make him an owner, it is not necessary that he should have paid for his stock. A corporation may give credit for its stock as well as for any other property sold by it. Nor is it necessary that certificates should have been issued. These only constitute proof of property which may exist without them. When the corporation has agreed that a person shall be entitled to a certain number of shares in its capital, to be paid for in a manner agreed upon, and that person has agreed to take and pay for them accordingly, he becomes their owner by a valid contract made upon a valuable consideration. (*Chaffin* v. *Cummings*, 37 Me. 83. See also *Spear* v. *Crawford*, 14 Wend. 20; *The Chester Glass Company* v. *Dewey*, 16 Mass. 94; *In re South Mountain Consolidated Mining Company*, 7 Sawy. 30; § 322, Civ. Code.)

The Statute of Limitations is relied on by appellants as a defense. This point has been determined adversely to the contention of appellants in *Green* v. *Beckman*, 59 Cal. 545. The statute did not commence running until the bank stopped payment, which was less than two years before the commencement of the action. We cannot see how it could have begun to run sooner. There was no right of action against the bank by the express terms of the by-laws until a demand and presentation of the depositor's book. The stoppage of payment by the bank gave at once the right of action. It had never refused payment before. It was in no default until the day indicated, when it closed its doors and by its acts spoke as significantly as words to that effect: "We refuse to pay any one. It is useless to present your bank book or demand, as we cannot pay." Then the depositor had a right to sue and not before. It follows "as the night the day," that the right of action against the stockholders

did not commence sooner. How could it? If on demand the bank had paid, the stockholders were discharged. Can it be maintained that there was no right of action against the bank, and still one against the stockholders? They are primary debtors, co-ordinately responsible (see *Mokelumne Hill Canal & Min. Co.* v. *Woodbury*, 14 Cal. 265), but one is not responsible before the other.

The conclusion here reached is a fair deduction from the principles declared in the case just cited, and it is expressly stated in *Davidson* v. *Rankin*, 34 Cal. 505, that the right of action against the corporation and the stockholder accrues at the same time.

In what has been said on this point we are not to be regarded as deciding that the cause before us, as to the bar of the statute, is not within the terms of section 348, Code of Civil Procedure, passed in 1874, and that there is really no limitation of this action. We do not decide it because we think it better to rest the conclusion reached herein on the grounds above expressed.

It is contended that the deposit here sued for was in a savings bank, which was the agent of the plaintiff to invest her money, and inasmuch as it was lost through the instrumentality of her agent, she could not maintain this action against the stockholders. Conceding that this would be so, were the plaintiff's claim here sued for a deposit in a savings bank, the proof here is conclusive that the Odd Fellows' Savings and Commercial Bank was a commercial and not a savings bank. This is plainly shown by the articles of incorporation. In these articles it is stated: "Said corporation is organized for the following named purposes: to do a general savings and commercial banking business, to buy and sell real and personal property, to discount bills, notes, and other commercial and negotiable paper and instruments; to buy and sell exchange; to receive money on deposit, with or without agreement to pay dividend or interest thereon; to borrow and loan money; to improve and lease real estate, and to do any and all acts incident to or necessary to the transaction of any and all the matters above stated." This is very different from a savings bank. (For a definition of a savings bank, see Grant on Banking, 546; *Huntington* v. *Savings Bank*, 96 U. S. 388; *Coite* v. *Society for Savings*, 32 Conn. 173;

*Osborn* v. *Byrne*, 43 Conn. 155.    See also Civ. Code, §§ 571-579, both inclusive )    The Odd Fellows' Savings and Commercial Bank had all the attributes of an ordinary commercial bank, as the articles indicate.

There was no error in admitting the judgment against the bank for which the judgment or order should be reversed. There was other evidence from the books of the bank to show the indebtedness, and because it was offered for this purpose the objection to its admissibility is urged.    The cause was tried by the court and when so tried we do not understand the objection of irrelevancy is tenable unless it is plainly apparent that the court has rested its decision on the irrelevant testimony.    (*Arthurs* v. *Hart*, 17 How. 6.)

As to the number of shares owned by the defendants, we think the finding was sustained by the evidence.

We find no error in the rulings of the court below and the judgment and order are affirmed.

MYRICK, J., SHARPSTEIN, J., McKINSTRY, J., KcKEE, J., and Ross, J., concurred.