[Civ. No. 1840.   Third Appellate District.—June 5, 1918.]

# W. M. DOTY, Respondent, v. CALIFORNIA RICE MILL-ING CO. (a Corporation), et al., Appellants.

VENDOR AND VENDEE—SALE OF PROPERTY—CONSIDERATION—CORPORATION STOCK.—In this action to enforce a vendor's lien upon certain real estate, it is held that there is nothing in the language of the instruments involved, nor in the circumstances surrounding the transaction, nor in the conduct of the parties, to warrant the conclusion that a cash payment for the property was contemplated, the sole consideration for the conveyance being the transfer to the vendor of corporation stock.

VENDOR'S LIEN—PAYMENT OF PRICE IN STOCK—CODE SECTION INAPPLICABLE.—Section 3046 of the Civil Code, giving one who sells real property a vendor's lien independent of possession for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer, does not apply where the price is paid by the issuance of shares of corporation stock.

ID.—SALE OF PROPERTY FOR STOCK—ESCROW—DELIVERY UPON PAYMENT OF EXISTING MORTGAGE—RIGHT OF VENDOR.—Where an agreement for the sale of real property subject to a mortgage provided that corporation stock was to be issued in payment for the property and placed in escrow as security for the performance of the vendor's agreement to convey the property free from liens, the vendor cannot, in an action to enforce his alleged lien, claim that he had not received the stock, since he could at any moment demand the same upon performance of the condition.

ID.—ACTION TO ENFORCE VENDOR'S LIEN—EVIDENCE—NOTICE OF LIEN—TESTIMONY ERRONEOUSLY EXCLUDED.—In an action to enforce a vendor's lien upon certain real estate, where the pleadings raised the issue as to whether the vendee or its transferee was a purchaser for value without notice of the vendor's rights, objections to testimony of officers of the corporations defendant that they had no notice of knowledge of plaintiff's claim of lien were erroneously sustained.

APPEAL from a judgment of the Superior Court of Butte County.   H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

Norman A. Eisner, Cushing & Cushing, and George F. Jones, for Appellants.

W. H. Carlin, for Respondent.

CHIPMAN, P. J.—This is an action to enforce a vendor's lien upon certain real estate situated in the town of Biggs, Butte County. It is alleged in the complaint: That on November 27, 1912, plaintiff executed and delivered to California Fruit Canners' Association, a corporation, a mortgage upon said real property to secure the payment by plaintiff to said Canners' Association of the sum of two thousand five hundred dollars, payable. as follows: Five hundred dollars on January 1, 1913; five hundred dollars December 1, 1913; five hundred dollars December 1, 1914; five hundred dollars December 1, 1915, and the remaining five hundred dollars December 1, 1916, with interest at the rate of six per cent per annum, which said mortgage was duly recorded May 15, 1913. That on December 1, 1913, "plaintiff did for the price or consideration of five thousand dollars to be paid to him by said defendant California Rice Milling Co., grant, sell and transfer, to-wit, the above described real property"; that said Rice Milling Company was incorporated on September 11, 1913, with a capital stock of one hundred thousand dollars, divided into one thousand shares, and that at the time of the execution and delivery of said deed, the said capital stock of said defendant California Rice Milling Company was reasonably worth fifty dollars per share; "and it was then and there agreed by and between plaintiff and said defendant California Rice Milling Co., that plaintiff should be paid the selling price of said lands in said sum of five thousand dollars by said defendant California Rice Milling Co., by the issuance by it to plaintiff of one hundred shares of its said capital stock aforesaid." That at the time of the execution of said deed there was still due and unpaid on said mortgage to said Canners' Association the sum of two thousand dollars; "and it was understood and agreed by and between plaintiff and said defendant California Rice Milling Co. that a certificate of the capital stock of the corporation should be issued in the name of plaintiff for one hundred shares as aforesaid and deposited with Sacramento Valley Bank at Biggs, Butte County, California, to be by said bank retained and held until the final payment by plaintiff of all moneys secured by said mortgage aforesaid, whereupon said stock was to be delivered over to plaintiff; and said defendant California Rice Milling Co. did forthwith, on or about said first day of December, 1913, cause to be

issued in the name of plaintiff its certificate No. 7 for one hundred shares of its said capital stock, and did place the same in and with said Sacramento Valley Bank, which received the same, all in accordance with said agreement aforesaid''; that thereafter, and until the twelfth day of November, 1914, plaintiff duly performed all acts and conditions on his part to be performed and paid installments upon said mortgage required by him to be paid up to and including said twelfth day of November, 1914, and ''that up to said twelfth day of November, 1914, the capital stock of said defendant California Rice Milling Co. was and continued to be of the same reasonable value of fifty dollars per share.'' That on said last-named date the said Rice Milling Company transferred all of said real property, together with all of its property of every kind and nature, to the defendant California Rice Mills, Inc., ''and thereby said defendant California Rice Mills, Inc., received, absorbed, gobbled up and gathered to itself all of the property of said defendant California Rice Milling Co., and thereby rendered the capital stock of said California Rice Milling Co., including that issued to plaintiff as aforesaid, and still in said Sacramento Valley Bank, utterly worthless and of no value whatsoever, and all of said stock has ever since continued to be, and still is, wholly worthless and valueless.'' That at the time of said transfer to said defendant California Rice Mills, Inc., defendant ''had full knowledge of plaintiff's rights in and to said real property and of all the matters and things in the first eight paragraphs in this complaint set forth''; referring to the foregoing averments.

It is then alleged that defendant, California Rice Mills, Inc., was incorporated on November 6, 1914, with a capital stock at and since its incorporation of two hundred and fifty thousand dollars, divided into two thousand five hundred shares, and after receiving said transfer of said property on November 16, 1914, defendant issued its certificate No. 6 for one hundred shares of its capital stock to plaintiff, ''and sent the same to said Sacramento Valley Bank for the purpose, as plaintiff is informed, believes and therefore alleges, of having the same substituted in the place and stead of said one hundred shares of stock of said California Rice Milling Co., placed there as aforesaid for this plaintiff under the terms and conditions heretofore in this complaint set

forth." That plaintiff has at all times declined to accept the said substitution of said one hundred shares of said Rice Mills, Inc., in lieu of said one hundred shares of said defendant Rice Milling Company, "and never consented in any way to or approved of said transfer of property from said California Rice Milling Co., to said California Rice Mills, Inc." That both of said certificates still "remain in charge of said bank, and plaintiff has never received any thereof." That since the execution of said deed by plaintiff on December 1, 1913, plaintiff has performed all covenants and agreements undertaken by him to be performed in connection with all the matters in said complaint set forth, and he has made all payments to said California Fruit Canners' Association which have thus far become due, "excepting only the payment falling due on the first day of December, 1914, and as to that payment he has by arrangement with said California Fruit Canners' Association obtained forbearance and extension until such reasonable time as he can adjust his affairs, and meet and pay the same, and he is now ready, willing and able to pay all moneys now due and unpaid upon said mortgage indebtedness, as well as all future payments required to be paid upon the same up to and including the last payment becoming due and payable, as aforesaid, on the first day of December, 1916." (The complaint was filed April 15, 1915.)

It is further alleged, on information and belief, that since November 12, 1914, defendant Rice Mills, Inc., "has become and now is insolvent, its business and affairs in process of liquidation, and all of its capital stock, including that placed as aforesaid in and with said Sacramento Valley Bank utterly worthless and of no value whatsoever." It is further alleged that plaintiff has at no time ever been a stockholder of, owned any stock in, or had anything to do with the management of either of said corporations, and that "plaintiff has received nothing whatsoever for his said transfer of said lands and premises in this complaint described and the whole consideration therefor in the said sum of five thousand dollars still remains unpaid, and at all times since said transfer has remained, and still remains unsecured, and the whole thereof will become due and payable to plaintiff at and upon the full and final payment of said mortgage indebtedness to said California Fruit Canners' Association aforesaid."

The prayer is for a vendor's lien upon all the lands and premises in the complaint described, "together with their improvements and appurtenances as security for the payment to him of the said selling price of said lands and premises in said sum of five thousand dollars; together with interest thereon at the rate of seven per cent per annum since the first day of December, 1913, and for costs of suit"; and that after said lien has been decreed, the same may be enforced by foreclosure and sale of said premises "and the proceeds of said sale be applied toward the payment of the amount found due and unpaid to plaintiff and secured by said lien, together with interest, expenses of sale, and costs of suit; that said certificates of stock in said Sacramento Valley Bank, as aforesaid, be ordered returned to the respective defendants causing the issuance of same; and for such other and further relief as to the court may seem meet and agreeable to equity."

A general demurrer to the complaint by the Rice Mills, Inc., was overruled and it answered generally and specifically, and also by cross-complaint. Briefly stated, it denied that plaintiff conveyed the property upon any consideration other than one hundred shares of the capital stock of the California Rice Milling Co., which was duly issued to respondent, and alleges that the transfer of the property of that company to appellant was upon valuable and adequate consideration, and that the value of the stock of that company was not in any way diminished by reason of the transfer to the Rice Mills, Inc. As separate defenses, alleged that it is the purchaser of the property for value and without notice of any claim of plaintiff; that plaintiff executed to appellant a quitclaim deed for the property, and that plaintiff agreed in writing to accept stock of this defendant in lieu of the stock of the California Rice Milling Company, which stock was duly issued by this defendant.

In an amended and supplemental cross-complaint, this defendant alleged that plaintiff agreed to convey the property free of encumbrances, and that notwithstanding plaintiff had mortgaged the property and by reason of plaintiff's failure to pay the same, and in order to prevent a foreclosure, this defendant was required to pay plaintiff's mortgage. The prayer is that plaintiff take nothing by this complaint and that defendant recover the mortgage payments made by it.

The lower court granted judgment for plaintiff, fixing a vendor's lien upon the property to the amount of $4,795, being the principal, five thousand dollars, and interest from date of conveyance, less the mortgage payment, $1,103.29, made by this defendant.

The judgment also ran against "the defendants W. J. Matson, George F. Braun and Charles E. Hale, as trustees for the stockholders of California Rice Milling Company, a dissolved corporation." These defendants have also appealed from the judgment, and their appeal is brought up upon another record—Civil No. 1854. The California Rice Mills, Inc., is the sole appellant herein.

The cause was tried by the court without a jury and the court made findings of fact substantially as alleged in the complaint.

It is found that plaintiff did not waive his right of a vendor's lien upon said property, but that on September 2, 1913, he executed and delivered to defendant Rice Milling Company on that day that certain agreement annexed to the answer as exhibit "A." (This is an agreement of lease by plaintiff to Charles E. Hale Company of the premises, including an agreement to sell the property to lessees or assigns at a price agreed upon, but not stated in the agreement, "free and clear from all encumbrances.") It is also found that plaintiff and said Hale Company entered into certain other agreements referred to in defendant's answer as exhibits "B" and "C." (Exhibit "B" is dated September 5, 1913, and is an agreement of plaintiff, first party, to sell said premises to said Hale Company, second party, and contains the following provision: "And the party of the second part, . . . agrees to and with the party of the first part that the party of the second part will convey without further compensation to the party of the first part, or his assigns, an interest in the Rice Milling Company owned and controlled by the party of the second part, or its assigns, to the value of five thousand ($5,000.00) dollars, in full paid-up stock in the said Rice Milling Company of the party of the second part. Said fully paid-up stock to be one hundred (100) shares, with a par value of one hundred ($100.00) dollars per share, based on an incorporation of one hundred thousand dollars.")

Exhibit "C" is dated September 5, 1913, and acknowledges the receipt by plaintiff from Charles E. Hale Company, Inc., of ten dollars "as part payment for the following described real property," the premises in question, and further states: "The entire price to be paid for said above described real property is $5000.00 (Five thousand 00/100 Dollars), and to be paid as follows: as written and stated in document called 'Agreement' and signed by Wm. M. Doty, Esq., of Biggs, California, known as party of the first part, and The Charles E. Hale Co., Inc., of San Francisco, Cal., known as the party of the second part, and which document called 'Agreement' is hereby made part of this 'Contract.' (Ex. B.) Title to be perfect; search of the same to be made; deed to be executed and delivered by the said Wm. M. Doty, Esq., to The Charles E. Hale Company, Inc. or its assigns on or before the second (2nd) day of September, A. D. 1915, together with an abstract showing a merchantable title. Said above described parcel of real property at time of execution of deed to be free and clear of all incumbrances of every name and kind, whatsoever. Provided, however, that the payment of amount as stated in document (called 'Agreement') is paid at said date, but if not paid on or before the said Second (2nd) day of September, A. D. 1915, then this contract to be of no effect, and in that event the said $10.00 Ten Dollars to be retained by Wm. M. Doty, Esq., as liquidated damages. Time is of the essence of this contract."

It is further found that on November 12, 1914, when the Rice Milling Company conveyed said property to defendant Rice Mills, Inc., "the latter paid to the former a valuable consideration for the lands, premises and property conveyed." It is found that "Chas. E. Hale Company was in fact the predecessor and promoter of the defendant California Rice Milling Company, and on or about the 29th day of September, 1913, said Charles E. Hale Company did transfer all of said agreements referred to as Exhibits 'A', 'B' and 'C' respectively to the defendant California Rice Milling Company, and the said deed executed by plaintiff on the 1st (2nd) day of September, 1913, as aforesaid, followed and was in accordance with the provisions of said Exhibit 'B' "; that defendants Matson, Hale, and Braun, trustees of said dissolved corporation, defendant Rice Milling Company, assigned and transferred to the Rice Mills, Inc., said agree-

ments "A," "B," and "C," and to prevent foreclosure, said Rice Mills, Inc., on October 12, 1915, paid to the mortgagee, California Fruit Canners' Association, upon the debt secured by said mortgage, five hundred dollars principal and $94.79 interest, being the installment due December 1, 1914, and interest on whole amount unpaid; and on December 6, 1916, it paid another installment of five hundred dollars and interest falling due December 1, 1915, leaving the remaining installment of five hundred dollars payable December 1, 1916.

As conclusions of law the court found that plaintiff is entitled to judgment against defendants for the sum of five thousand dollars and interest from December 1, 1913, at seven per cent per annum, less the payments made by defendant Rice Mills, Inc., leaving the amount of the judgment at $4,795, provided if defendants, or any of them, should pay the balance due on said mortgage in the sum of five hundred dollars and interest falling due December 1, 1915, such amount shall be deducted from said sum of $4,795; that plaintiff is entitled to a vendor's lien upon said lands and premises, and that the same be foreclosed and the property sold to pay said sums, but no deficiency judgment to be docketed. Judgment followed accordingly.

Plaintiff was engaged in merchandizing in the town of Biggs and purchased the property in question from the California Fruit Canners' Association November 30, 1912, the consideration being two thousand five hundred dollars, of which five hundred dollars was paid about the time of purchase and the balance was to be paid in installments, for which promissory notes were given of five hundred dollars each, payable as shown in the mortgage mentioned in the pleadings and findings. At the time there was an old building on the land, very much dilapidated and of little value in its then condition.

Charles E. Hale Company, a corporation, was carrying on a wholesale grocery and bakers' supply business in San Francisco and conceived the plan of establishing a rice milling establishment at the town of Biggs. To this end this company entered into negotiations with plaintiff to lease, with the privilege of purchasing from him, the said premises. These negotiations took written form in the three instruments above referred to, the first dated September 2, 1913, which was a lease with an option to purchase; the second and third

were instruments dated September 5, 1913, by which plaintiff agreed to convey the property to the Charles E. Hale Company, the lease being made part of the agreements by reference. It appeared that the original proposition to plaintiff was that the Rice Milling Company should be incorporated for fifty thousand dollars, on which, as a basis, plaintiff was to have stock of the par value of five thousand dollars. It was later decided to capitalize the company at one hundred thousand dollars and plaintiff was given stock of the par value of ten thousand dollars. On September 24, 1913, pending negotiations, plaintiff wrote the Hale Company requesting it to make the sale a cash transaction, the letter reading: "In looking over the papers and before returning them to you, we would ask if the Chas. E. Hale Co. has passed a resolution authorizing their secretary to sign the various papers that have been submitted to us. We are not attempting to stall you at all, but it is better to get this right than to attempt to correct it later. Also, would it be agreeable to you to make a cash price on the building should anything happen that would make it practically impossible for us to continue as we now expect to? I am suggesting this as many things may happen in twenty-four months, and submit it to you for your approval or disapproval, as the case may be." On September 29, 1913, Hale Company replied as follows: "Referring to your letter of the 24th inst. in which you asked if it would be agreeable to come to some agreement as to a cash price on the building, it will be quite impossible to take up a subject of this kind by correspondence." On September 30, 1913, plaintiff wrote the Hale Company again, stating: "Before returning you the papers asked for by Mr. Barnard this morning, I would like to insert the following: ('or W. M. Doty is to receive cash for the above mentioned cannery building and grounds, to the amount of $5000.00; he to have the right of accepting either proposition.') Will you kindly instruct me to have the above inserted in the agreement over our signatures, and oblige yours very truly." On October 1, 1913, the Hale Company replied, repeating the request made by plaintiff: "Beg to say we cannot see our way clear to allow you this privilege at this time and consequently your request is respectfully declined. Please deliver the three documents you have in your possession to our Mr. W. E. Barnard on demand, and by so

doing very much oblige, Yours truly," and on September 22, 1913, a certificate for one hundred shares of the Rice Milling Company stock was issued, signed by Chas. E. Hale, president, and Geo. F. Braun, secretary, which recited that "W. M. Doty is the owner of one hundred shares of the capital stock," etc. This certificate was placed in escrow in the Sacramento Valley Bank at Biggs, on or about September 25, 1913, with instructions reading as follows: "To be indorsed by Mr. W. M. Doty, opened, to be held in escrow by Bank until mortgage is paid off by W. M. Doty on Cannery Property, then stock to be turned over to W. M. Doty," signed, "California Rice Milling Co., by George F. Braun, Secretary." Plaintiff went to the bank and indorsed the certificate, leaving it there with the escrow memorandum, and, to conclude the transaction, plaintiff, on December 1, 1913, executed and delivered his deed to the Rice Milling Company of the said premises, and the Milling Company went into possession and at once commenced preparing the building for its contemplated uses and the installation of the necessary rice milling machinery. The improvements of the building cost $7,551, and the testimony of Mr. Hale was that the Charles E. Hale Company had "put in twenty-six thousand dollars actual money," and were responsible for the machinery purchased, making in all about forty-two thousand dollars contributed by the Hale Company in establishing the plant.

The Rice Milling Company operated the plant about eleven months and until about the middle of November, 1914, and, as stated in respondent's brief, "had built up and established in the vicinity a fairly thriving rice milling business."

Before advancing to the second phase of plaintiff's investment, it is perhaps best that we should at this point determine whether or not the finding that respondent conveyed the property for the price of five thousand dollars to be paid him by the Rice Milling Company is supported by the evidence. It is challenged by appellant, whose contention is that the sole consideration for the conveyance was the shares of the Rice Milling Company's stock. It is not claimed by respondent that any false or misleading representations were made to respondent by any of the promoters of the enterprise, or that there was any fraud in any form practiced upon him, or that any advantage was taken of his ignorance of the promoters' in-

tentions. There was no agreement or representation that the stock of the proposed company should have or continue to have any specified value. Plaintiff seems to have been informed of the object they had in view from the beginning of the negotiations. There is nothing in the language of the instruments, nor in the circumstances surrounding the transaction, nor in the conduct of the parties to warrant the conclusion that a cash payment was contemplated. Had such been the intention of the parties, the natural thing to have done would have been to so express it in some unmistakable written form. They were all men of experience in business affairs and presumably capable of expressing their intention in simple and plain English in a matter such as this—simple and plain as it was. The enterprise was a legitimate and promising one, and was to be inaugurated and built up at respondent's place of residence and in what was known to be a rice-producing neighborhood. The testimony of plaintiff and Mr. Hale was that at its inception the only property or assets the Milling Company had was the land conveyed by respondent to the Milling Company, which respondent valued at five thousand dollars. At that time the value of the company's shares, beyond the value of the land, was purely prospective and depended on the installation of a plant of sufficient capacity, which the Hale Company was to erect, and did erect, and its successful operation. It represented, when completed, an investment, including the land, of about fifty thousand dollars, and according to respondent's contention his shares represented a value of about five thousand dollars. The value of these shares is, perhaps, not material if the transaction was as respondent contends, and as the court seems to have found, that the sale of the land was for five thousand dollars, to be paid in money, and that the shares issued were but evidences of the company's indebtedness for that amount.

We must look to the written agreements to ascertain what the transaction was, for the negotiations ultimately found expression in them. The provision relied upon is found in the agreement of September 5, 1913, mentioned above as defendant's exhibit "B," which is that plaintiff will convey to Charles E. Hale Company, or assigns, the property in question, "to the value of five thousand ($5000) dollars, in full paid-up stock in the said Rice Milling Company of the party of the second part; said fully paid-up stock to be one hundred

shares with a par value of one hundred ($100) dollars per share based on incorporation of one hundred thousand dollars." We find ourselves unable to give these agreements a construction that would justify a finding that the Charles E. Hale Company or the Rice Milling Company, as its assigns, agreed to pay plaintiff five thousand dollars in money for the property. Plaintiff sought by his letters of September 24th and 29th, noticed above, to have this very provision placed in the agreements as optional with him, but it was expressly refused, and he allowed the shares which had been issued in his name, pursuant to the agreement and with his indorsement of the certificate, to remain in escrow as security for his payment of the mortgage debt resting on the property, the escrow agreement being that the certificate was to remain until the "mortgage was paid off by W. M. Doty on cannery property, then stock to be turned over to W. M. Doty."

Respondent's right to a vendor's lien is to be derived, if at all, from section 3046 of the Civil Code, to wit: "One who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured otherwise than by the personal obligation of the buyer." Obviously, if the price for the property was paid by the issuance to respondent of said shares, the statute does not apply. Respondent contends that he never was a stockholder in either company; that he never was permitted to have any stock. Appellant contends that under the agreement by which respondent became entitled to one hundred shares of stock for his property, he became a fully paid vendor. Authorities are cited to the effect that the agreement to issue stock for the property constituted the respondent a stockholder. For example, in Cook on Corporations, section 52, it is said: "Any agreement by which a person shows an intention to become a stockholder is sufficient." Again at page 28: "Issuance of the certificates of stock is not necessary to constitute one a stockholder or owner of shares in a corporation."

In *Garretson* v. *Pacific Crude Oil Co.*, 146 Cal. 184, 188, [79 Pac. 838, 840], the court said: "The fact that the Corbin shares were not issued until after other shares had been issued is immaterial, for the Corbin stock passed upon the completion of the agreement by which the consideration was conveyed to the corporation. Nothing remained to be done but the formal issuance of the certificate, upon which the ownership

of the stock did not depend.'' (See, also, *Mitchell* v. *Beckman*, 64 Cal. 117, 121, [28 Pac. 110].) Here, however, the stock was in fact issued. Respondent says: ''Such is the law, but that law has no bearing upon the case at bar. Here we are dealing with this corporation, which so far as it was concerned never permitted respondent to have any stock. In fact, it was contemplated that he wouldn't have such stock until December 1, 1916, when the last installment of the mortgage indebtedness must be paid.'' The escrow agreement was part of the transaction. Respondent was to convey the property free from encumbrance. There was a mortgage indebtedness resting upon it and by agreement his shares were placed in escrow as security for his performance and to be delivered to him upon performance. He could at any moment have demanded and would have received the certificate upon payment of the mortgage debt. Respondent interposed no objection to this disposition of the stock, nor could he, since the use made of it was for no other purpose than to secure the performance of his obligation and was apparently with his consent.

What was said in the case of *Greenberg* v. *California Bituminous Rock Co.*, 107 Cal. 667, [40 Pac. 1053], would seem appropriate in this case: ''The corporation did not guarantee that the stock should always have a value equal to the then actual or estimated value of the land, or that, if the stock should decline in value, they should be paid in money or have a vendor's lien as for a money consideration. It certainly could not have been the intention that these parties should sell their land to the corporation for a definite number of shares of its capital stock, and that they might leave their stock unissued in the hands of the corporation, so that if the corporation was prosperous, and its stock valuable, that they would then take it, but if the corporation became involved, they might possibly escape liability as stockholders by refusing to take it upon the ground that the stock was not of the value they contracted for, but hold the land as security for its alleged value by a proceeding to foreclose a vendor's lien.''

We come now to the second phase of the transaction. In the early part of November, 1914, the Rice Mills, Inc., or second company, as it is sometimes called, was incorporated. Its articles were filed with the county clerk of the city and county of San Francisco on November 5th, and on the 6th were filed with the Secretary of State. This corporation was organized

with a capital stock of two hundred and fifty thousand dollars in shares of one hundred dollars each. Its objects were the same as those of the old company and it was organized to take over its property. The corporators, with the exception of Chas. E. Hale, were different persons from those who organized the old company and the president and secretary were not the same. The old company conveyed its property and assets to the new company, the consideration being that the new company assumed the liabilities of the old company and in addition transferred to it 420 shares, of the par value of forty-two thousand dollars, of the new company. On this subject Mr. Hale testified as follows, and it was not disputed: "I explained to Mr. Doty that I thought the new corporation being one of more financial strength, the stock in that would be much more desirable than the one in the old company, which was not so strong financially, and that the exchange looked to be an advantageous one for the stockholders in San Francisco of the old company. We wanted to present the matter to him; I had brought Mr. Glass and Mr. Lilly with me to explain the matter to him, to ask him if he looked at it in the same light, and if he did, to enter into the agreements we had done in San Francisco, to carry out the project of having the new company, which had already bought the Pacific Rice Milling Company of San Francisco, also buy the mill at Biggs; if he felt that was a good thing to do we would like to have him join us, and we were waiting his decision of the matter, as he was stockholder in the old company, and after going over the subject several hours, and, as I recollect it, asking all the questions relating to it, he thought that it would be a good thing to do and consented, and signed the contract and also gave me the proxy to take back with me to San Francisco to vote in favor of it at a called meeting of the directors of the old company."

While the negotiations were pending, plaintiff executed and delivered the following agreement, referred to by Mr. Hale in his testimony:

"California Rice Milling Co.,
"Biggs, Cal., Nov. 2nd, 1914.

"To whom it may concern:
"Agreement in duplicate.

"I, W. M. Doty, of Biggs, California, agree on demand to the transfer of my one hundred shares (par value $10,000)

of the California Rice Milling Company (Inc.) stock, now held in escrow by the Sacramento Valley Bank of Biggs, Cal., for an equal amount of the paid-up stock in the company of the prospective purchasers of said California Rice Milling Company.

"W. M. DOTY.

"In consideration of the above transfer, the California Rice Milling Company agrees to waive all assessments and or other liabilities prior to the transfer of stock from the old into the new company.

"CALIFORNIA RICE MILLING COMPANY (Inc.),

"Per CHAS. E. HALE, Prest."

On the same day, plaintiff delivered to Mr. Hale the following proxy:

"Know all men by this writing: That I, W. M. Doty, hereby appoint Chas. E. Hale my proxy to vote in my place at a called meeting of the stockholders of the California Rice Milling Company to be held on the —— day of November, 1914, at San Francisco, California, and at any adjourned meeting thereof according to the number of votes I would be entitled to if I were personally present, without power of substitution or revocation. This proxy shall continue in force until December 1st, 1914.

"Witness my hand this second day of November, 1914.

"W. M. DOTY."

By quitclaim deed of date November 13, 1914, plaintiff conveyed the said premises to California Rice Mills, Inc. On November 16, 1914, the new company issued, as a part of the 420 shares it had agreed to issue to the old company, certificate No. 6 to plaintiff, and as the said mortgage indebtedness of plaintiff was still unpaid in part, this certificate was placed in escrow with the other certificate and plaintiff indorsed it as he had indorsed the first certificate. The Rice Milling Company conveyed the said premises and appurtenances to the Rice Mills, Inc., on November 12, 1914. The new company operated the plant for six or eight months, when it failed and shut down. The evidence was that the Johnson-Locke Mercantile Company, the owners of a majority of the stock of the new company, had undertaken to finance the new company, failed, and carried the Rice Mills, Inc., or new company, with it. It would seem unnecessary to trace the misfortunes of the

new company. This company took over the property under the agreements entered into by plaintiff with the old company and its deed. The old company proceeded to wind up its affairs preparatory to dissolution and was finally dissolved by decree of court, and presumably its obligations to creditors were satisfied, otherwise it could not have secured the decree. Admittedly, however, there was nothing left for the stockholders, and it is conceded that the stockholders in the new company are in like situation. The court found that at the time appellant acquired the property, it had full knowledge of all plaintiff's rights therein. Plaintiff never at any time, before bringing the action, claimed a vendor's lien. Defendants endeavored to show by the officers of both the old and new company that they had no knowledge or notice that such a claim was made by plaintiff. The court sustained objections to this line of inquiry erroneously, we think, for the pleadings raised the issue whether appellant was a purchaser for value without notice. The finding, however, is that appellant purchased with knowledge "of all plaintiff's rights," but does not specify what those rights were. So far as the existence of a right to a vendor's lien is concerned, the only right respondent had must be traced to the agreements already disposed of. If the finding refers to respondent's right arising out of these agreements and means that appellant had notice of these agreements and of such rights as they carried, the finding is supported. But we have seen that no vendor's lien arose out of these agreements with the Rice Milling Company, and it seems to us equally clear that no vendor's lien arose by reason of the transfer of the Rice Mills, Inc., or from respondent's relation to the latter. Plaintiff gave his written consent to the transfer of his shares in the old company for an equivalent in the new company; he appointed Mr. Hale as his proxy to vote these shares in the new company; he indorsed the certificate and left it in the bank to take the place of the share he held in the old company, and he conveyed by deed to the new company his interest in the premises he now seeks to have charged with a vendor's lien. The negotiations and their culmination in making plaintiff a stockholder in the new company appear to have been free from fraud, misrepresentation, or mistake; indeed, nothing of this sort is alleged or claimed.

Appellant contends that, if it can be said that a vendor's lien ever existed, "it has been waived time and again," and

especially "by the execution of a deed by the vendor to a subpurchaser." We do not think it necessary to consider the question of waiver. We feel quite satisfied that, for the reasons above given, no vendor's lien arose out of the transaction, and that the findings of facts from which the learned trial court reached the conclusion that such a lien did arise in plaintiff's favor are without support in the evidence. We are further satisfied that the evidence does not support the finding that plaintiff sold and transferred the property to the Rice Milling Company "for the price or consideration of five thousand dollars to be paid to him by said defendant California Rice Milling Co.," and that the judgment for said sum is without support.

The judgment is, therefore, reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 1, 1918.